70 So.2d 130

In re KELLY et al.

No. 41482.

Jan. 11, 1954.

Hayes & Harkey, Monroe, and Polk & Culpepper, Alexandria, for relators.

Hudson, Potts, Bernstein & Davenport and Wood H. Thompson, Monroe, for respondents.

McCALEB, Justice.

This case is before us on a writ of certiorari issued to the Fourth Judicial District Court for the Parish of Ouachita and presents for decision the legality of eleven appointments in the police department which were made by the Mayor and Commission Council of the City of Monroe on August 1st 1952 under the municipal fire and police Civil Service Law, Act No. 102 of 1944, as amended by Acts No. 30 of 1946 and No. 197 of 1948 and incorporated in the LSA-Revised Statutes as Title 33, Sections 2471–2508.[1]

The facts and events from which the litigation emanates are as follows: Pursuant to Act No. 102 of 1944, the City of Monroe created a municipal fire and police Civil Service Board on March 19th 1946. This Board, acting in concert with the Mayor and Commission Council of the city, established a classification plan covering the personnel of the fire and police departments and, conformable with Section 12 of Act No. 102 of 1944 (now LSA-R.S. 33:2484), allocated the personnel then employed to positions in the various classes within the

1. The statute, which provides for a municipal fire and police Civil Service Law in cities having a population of not less than 13,000 nor more than 250,000, was adopted as an amendment to the Constitution on November 4th 1952 and is designated as Section 15.1 of Article 14, see Act No. 302 of 1952.

classification plan. This plan, as adopted and promulgated, was somewhat incomplete for it embraced only six classes of police officers,[2] whereas the statute provided for a much more comprehensive classification of positions requisite for the operation of a police force.[3] Indeed, the original classification of police service singularly failed to include a Department of Crime Detection and Identification and made no provision for the position of Assistant Chief of Police. However, as time went on, the services attendant to those positions were actually performed by various officers (the respondents herein) who were classified under the original plan as Patrolmen, Patrolmen First Class, Police Sergeant and Captain of Police. And, although attempts were made on two prior occasions to correct the manifestly incomplete classification plan by allocating the unclassified positions to the persons who were performing the services thereof, nothing was accomplished until July 31st 1952 when the Mayor, in a letter to the Chief of Police, announced the creation of, "subject to final approval of Allocation Plans which have been drawn and are in the Process of being presented to the Chairman of the Monroe Municipal Fire and Police Civil Service Board," a Detective and Identification Department, a Uniform or Patrol Department and an Administrative Division of the Patrol Department. In this letter, the Mayor also provisionally promoted four of the respondents to the positions of Assistant Chief of Police, Chief of Detectives, Captain of Detectives and Captain of Identification, conditioned upon final adoption of the classifications by the Civil Service Board.

On August 5th 1952, two of the relators (Kelly and McMullen) who were members of the Police Department filed a complaint with the Civil Service Board, alleging that the positions were improperly filled.

On August 8th 1952, the Chief of Police posted certain proposed allocations for the Monroe Police Department and advised all interested parties that any protest respecting these new allocations should be filed with the Civil Service Board at its meeting.[4]

On August 27th 1952, the relators herein (27 members of the Monroe Police force) filed written complaints with the Civil Service Board objecting to the promotions made

2. Patrolmen, Patrolmen First Class, Police Sergeant, Police Captain and Police Chief.

3. LSA–R.S. 33:2481 specifies nine separate types of classified service including, in particular, the departments of crime prevention, identification, inspection and investigation.

4. The supplementary allocations proposed by the Chief of Police were for Police Radio and Switchboard Operator, Detective Captain, Chief of Detectives, Detective Sergeant, Detective, Patrolman, Police Sergeant, Police Captain, Identification Captain, Identification Technician and Assistant Chief of Police.

by the Mayor in his letter of July 31st 1952 and to seven other promotions which were granted since that date, contending that all of these promotions were violative of the Civil Service Law.

On October 28th 1952, hearings were had on the proposed new classifications and allocations by the Civil Service Board and, at that time, the proposed amended classification plan and the new allocations were verbally adopted and approved. However, relators' protests, which were scheduled to be heard on that date, were deferred until January 9th 1953, at which time the complaints were partially considered, the proceeding being finally completed on January 15th 1953, when the protests were overruled and the appointments and promotions of the respondents confirmed.

█ On February 10th 1953, relators, acting under authority of LSA–R.S. 33:2501, appealed from the adverse ruling of the Civil Service Board, alleging that its decision was "not made in good faith for cause" under the provisions of the law.[5] In due course, the respondents appeared and moved to dismiss the proceeding on the ground that relators had not complied with the provisions of LSA–R.S. 33:2501 in that the appeal had not been timely taken. This motion was overruled but, after a hearing on the merits, the trial judge held that the action of the Civil Service Board was proper, being in accordance with the provisions of LSA–R.S. 33:2486.

In this court, respondents have reurged their motion to dismiss relators' appeal from the ruling of the Civil Service Board, contending that the classification plan was approved by the Board on October 28th 1952 and that, by the provisions of LSA–R.S. 33:2501, relators were required to appeal within 30 days from that date.

█ We find no merit in this postulate for the reason that the protests of relators were not finally disposed of until January 15th 1953. Prior to that date, any action for review would have been premature. Their appeal on February 10th 1953 was, therefore, timely.

On the merits of the case, the sole issue presented for decision is whether the City of Monroe, as the appointing authority, and the Civil Service Board were vested with power, in amending the original classification plan establishing the police department under the municipal fire and police Civil Service Act, to allocate and induct the respondents in the positions, which had been previously created but which had not been theretofore allocated as part of the classification plan.

5. This allegation is essential in order to appeal from a decision of the Civil Service Board. Pettit v. Reitzell, 202 La. 12, 11 So.2d 13, 15, and State ex rel. Whitfield v. Municipal Fire and Police Civil Service Bd. of City of Monroe, 211 La. 963, 31 So.2d 178.

The applicable provision of the statute is LSA–R.S. 33:2486, reading as follows:

"Every person employed in the municipal fire and police services for a continuous period of at least six calendar months immediately preceding the date that this Part takes effect in the municipality, who was regularly and permanently appointed to a position coming under the classified service, shall be inducted into and bound under the classified service, the provisions of this Part, and the rules adopted hereunder.

"*When any position is first allocated hereunder,* or is reallocated to a different class to correct an error in its previous allocation, or because of a change in the duties of a position which has the effect of abolishing the position and creating a new position of another class, *the employee in the position may continue to serve therein, with the status and all the rights and privileges he would have had under this Part if he had been originally appointed by examination and certification hereunder to a position of the class to which the position has been allocated or reallocated.* Such employee however may be transferred without further tests of fitness or certification to any position of the class to which the position was previously allocated while held by the employee.

"Any employee who feels himself aggrieved because of any allocation or change in classification affecting his position shall, upon his request, be heard thereon by the board; and the board shall hear and decide the complaint in any manner it deems proper." (Italics ours.)

It is the contention of the respondents that the italicized portion of the second paragraph of the foregoing section sustains the legality of their appointments in view of the fact that each of them occupied the position to which he was appointed or promoted at the time that that position was first classified and allocated under the Civil Service Law.

Relators maintain, on the other hand, that the provisions of LSA–R.S. 33:2486 apply only to the initial allocation of positions included under the original classification plan. And they argue that any other interpretation would be contrary to the spirit, if not the letter, of the law in that it would sanction the creation of new positions and the "freezing in" of the persons occupying them without competitive tests or promotional appointment by the simple process of making initial allocations of the positions in classified service.

A careful consideration of the entire statute and the constitutional provisions respecting civil service satisfies us that the proposition advanced by relators is not well founded and that the Civil Service Board and the trial judge were correct in ruling

that the respondents were entitled to hold the positions allocated to them in the classified service, despite the fact that they had not been originally appointed thereto by examination and certification.

To begin with, it is to be observed that the contention of respondents is strictly within the letter of the law because the portion of LSA–R.S. 33:2486, which we have above italicized, declares in explicit terms that, when any position is initially allocated under the act, the employee holding it may continue to serve with the same status as he would have had if he had been originally appointed by examination and certification. This, in itself, would furnish a valid ground for the maintenance of respondents' stand—for Article 13 of the LSA–Civil Code states that the letter of the law is to be applied when it is free from ambiguity and exhorts us not to disregard it under the pretext of pursuing its spirit.

But, in addition, we think that the provision is within the spirit of the law because a reading of the entire Act justifies the view that the Legislature did not intend that initial allocation of positions under a police and fireman civil service system should be filled on a competitive basis when the duties of the position were already being performed by a member of the force. This will be gleaned from LSA–R.S. 33:2484 providing for the allocation of new positions created after the adoption of the original classification plan and LSA–R.S. 33:2487, 2488, 2489, 2490 and 2491 clearly

indicates that the only instances in which promotional or competitive tests are requisite are in the filling of vacancies occasioned by resignation, death, transfer and the like.

The contention of counsel for relators, that the appropriate provisions of LSA–R. S. 33:2486 are applicable only to positions allocated under the original classification plan, stems from the belief that all appointments and promotions under civil service laws, save those made by coverall inductions under original classification plans, are to be founded on certification of efficiency and fitness resulting from competitive examinations. And, in support of this thought, they heavily rely on decisions from other jurisdictions.

While it is no doubt generally true that, under civil service acts and their constitutional counterparts, see Section 15 of Article 14 of our Constitution, it is the declared policy that promotions or inductions into classified services shall be based on competitive examinations, those provisions are not applicable to the fire and police civil service law involved in this case. Specifically, by paragraph (W) of Section 15 of Article 14 of the Constitution, see Act No. 18 of 1952, it is provided that that section is not effective with respect to fire or police departments established under municipal fire and police civil service systems as outlined by LSA–R.S. 33:2471–2508. The basis for the exceptions in the municipal fire and police civil service law is that

an officer, who is satisfactorily performing the duties of a position, which should be but is not yet classified, needs no examination to determine his qualifications for the job.

The writ of certiorari issued herein is recalled and the rule to show cause is discharged.