TATE, Justice.
The basic issue is whether, in a civil service system based upon promotion on the basis of seniority and examination, employees may nevertheless be appointed to newly created supervisory positions without examination and despite lack of seniority.
The court of appeal held, 327 So.2d 548 (La.App.2d Cir. 1976), that by virtue of Art. 14, Section 15.1, subsection 16, La. Constitution of 1921, seniority and examination requirements did not apply to appointments to newly created positions, relying upon In re Kelly, 224 La. 574, 70 So.2d 130 (1954). We granted certiorari, 332 So.2d 217 (1976), because we doubted the correctness of that conclusion.
I.
This litigation arises under the municipal fire and police civil service system. It was first created by Act 102 of 1944, La.R.S. 33:2471-508 (1950), and later constitutional-ized almost verbatim as Section 15.1 (subsections 1 through 39) of Article XIV, Louisiana Constitution of 1921 (pursuant to constitutional amendment submitted by Act 631 of 1956).
These provisions were continued as statutory law by the 1974 constitution (Article 10, Section 18), which created and established the municipal fire and police civil service system, Section 16, and provided that, Section 17, “Permanent appointments and promotions in municipal fire and police civil service shall be made only after certification by the applicable municipal fire and police civil service board under a general system based upon merit, efficiency, fitness, and length of service” as provided by the previous constitutional provision, Article XIV, Section 15.1, Louisiana Constitution of 1921.
II.
The facts show, insofar as pertinent to our decision:
In April, 1972, the elected Public Safety Commissioner of the City of Shreveport designated three majors (the 1st, 3d, and 4th ranking) as assistant police chiefs. These were new classifications for the Shreveport Police Department.
Subsequently, in November 1972 (after protests against the illegality of these appointments), the Municipal Fire and Police Civil Service Board formally created new classifications (one class of Assistant Chief, two positions, and one class of Assistant Chief for Administration, one position). It then certified to these positions the three appointees who were filling the positions, without examination and without regard to seniority.
Several plaintiffs then filed suit to vacate these appointments as illegal and to require testing, certification, and appointment of employees to these new positions in accordance with Article 14, Section 15.1. These plaintiffs included the second-ranking major, who had been passed over by the appointments.
As the court of appeal correctly held, the municipal fire and police civil service system created by that provision “has a basic premise that positions within the classified service should be filled on the basis of testing and seniority, i. e., when a group of candidates have demonstrated *1317 their qualification for a particular position by passing a test, the position should be offered first to the eligible candidate with the greatest seniority.” 327 So.2d 549.
III.
The civil service board and the previous courts held that the blanketing in of the incumbents previously appointed to the new positions is authorized by Subsection 16 of Article 14, Section 15.1.[1] This provision in part provides: “When any position is first allocated hereunder, . . . the employee [in] the position may continue to serve therein, with the status ... he would have had . . . if he had been originally appointed by examination and certification * *
The language quoted is susceptible to the interpretation followed. Nevertheless, we reach a different interpretation: The provision should be read in context with Article XIV, Section 15.1 as a whole and with the preceding Subsections 13, 14, and 15[2], as *1318 well as in its context within Subsection 16 (quoted in full in footnote 1).
Section 15.1 provides that, after civil-service boards adopt a classification plan (Subsection 13, see footnote 2) and allocate each position in the classified service to its appropriate class within the classification plan (Subsections 14 and 15, see footnote 2), then incumbents serving in these positions (when allocated to their appropriate class) will continue to serve in them (Subsection 16, see footnote 1). Furthermore, whenever the duties of a position are so changed that the position in effect belongs within a different class than that to which originally allocated, the change operates to abolish the position and to create a new position of a different class (Subsection 14, second paragraph, see footnote 2), to which it is reallocated (Subsection 16, second paragraph, see footnotes 1 and 4), without loss of status by the incumbent.
 In context, Subsection 16 thus provides that an employee already serving in a position (either at the time the civil-service system comes into effect, or by virtue of a permanent appointment to it under the civil-service system) shall continue to serve in it, after it is allocated or reallocated, as if he had originally been appointed to the newly classified position after proper examination and certification to it. In context, this continuance of civil-service status as a permanent appointment to the newly classified position, without re-examination or re-certification by the board, occurs only in connection with (1) the allocation under Subsections 13 and 14 of pre-existing positions initially to their proper class[3], or (2) the reallocation of pre-existing positions to their proper class.[4]
To summarize: In the context of its statutory setting, Subsection 16 does not permit the creation of entirely new positions in an existing civil service system, and then filling them by political appointment without examination and without regard to seniority in service. Subsection 16, in the context of the preceding Subsections 13-15, merely permits the “allocation” or “reallocation” of pre-existing permanent positions without examination or certification; it does not authorize the creation of new positions to be available for political appointment without compliance with civil-service requirements.
Thus, the apparent intent of Subsection 16 is (1) to blanket in all employees at the time a civil service system becomes effective (when its pre-existing positions are first allocated to a class), and (2) thereafter, similarly, to prevent loss of status to those permanent employees if the positions to which they have previously been permanently appointed are allocated or reallocated.
We are re-enforced in this interpretation by considering the provisions of Section 15.1 as a whole. Stringent provisions limit filling vacancies (Subsection 17), demotions (18), transfers (19), layoffs and re-instatements (20, 29), abolition of positions (28), testing for eligibility (22), admission to promotional or competitive tests (23), and certification and appointment (24). The object of these provisions is both to assure initial appointment on the basis of examinations, and thereafter to assure promotions *1319 to classified permanent employees on the basis of both seniority and examinations (including confirmation by a working test (Subsection 25) following initial certification to a classified position).
Likewise, Subsection 26 stringently limits temporary or provisional appointments in duration and prevents such appointees from acquiring permanent status. This further manifests the statutory intent that permanent status be acquired only through examination, and that promotion to another classified position be permitted only in accordance with the statutory scheme upon certification on the basis of examination plus seniority qualifications.
The civil service system created by Section 15.1 is based upon permanent appointment or promotion only after certification for eligibility based on testing and length of service. In context, Subsection 16 does not provide a method of evading this basis for permanent appointments or promotions by permitting blanketing in political appointees to newly-created positions; it simply protects permanent employees in pre-exist-ing positions from adverse loss of status when their positions are initially allocated or are subsequently reallocated to a classification within the civil service system.
We conclude, therefore, that when (as here) an entirely new position is created and then initially allocated within the classified service, no permanent appointment may be made to it except in accordance with the examination and certification procedures set forth by Section 15.1.
The present appointments were made (without examination or certification) to then non-existing positions, i. e., positions not included within the classifications of the civil-service system at the time of the appointments. For the reasons noted, these appointments did not confer upon these appointees any status to continue as permanent employees in these positions when, thereafter, the positions were formally created and allocated within the police civil service system.
Accordingly, the present appointments to these three new positions must be vacated. Permanent appointments to them may be made only upon certification after examination in accordance with the procedures provided by Section 15.1.
IV.
The defendants argue, however, that this court in In re Kelly, 224 La. 574, 70 So.2d 130 (1954), has interpreted Subsection 16 so as to permit the blanketing in, without examination or certification, of appointees who had previously received temporary appointments similar to the present. The language and reasoning of the decision is, indeed, supportive of the defendants’ contentions.
However, under the facts of that case, with regard to the new positions, even prior to the temporary appointments, “the services attendant to those positions were actually performed by various officers (the respondents herein)”, despite their formal classification in other categories. 224 La. 574, 70 So.2d 131. In upholding their blanketing in, we held, 70 So.2d 133: “The basis for the exceptions in the municipal fire and police civil service law is that an officer, who is satisfactorily performing the duties of a [pre-existing] position, which should be but is not yet [properly] classified, needs no examination to determine his qualifications for the job.”
In the present case, unlike Kelly, the appointee officers were “appointed” by the political authorities to entirely new positions, with broadened responsibility and' greater pay, than that which, prior to the appointments, they had been performing by virtue of their permanent appointment to a previously existing classification of the civil service system. Tr. 59-65. In the present case, we are concerned with creation of an entirely new supervisory position, not as in Kelly with only a proper classification or allocation of a permanent position performing the same services as now properly allocated.
Kelly may thus be distinguished insofar as applicable to the present ease. Argu *1320 ably, it is also distinguishable under its facts as involving only a delayed completion of an initial classification plan, rather than (as in the present instance) a re-organization of a previously adopted classification plan and the creation of new administrative provisions in connection therewith.[5]
V.
The remaining arguments of some of the plaintiffs-relators deal with the alleged lack of proper notice before creation of the new classifications, and with the alleged lack of hearing given one of them (Lt. Templin). For the reasons assigned by the court of appeal, 327 So.2d 551, we find no merit to them.

Decree

Accordingly, we affirm the determination of the court of appeal that the three new positions were properly created; but we reverse its decree insofar as it held that the three officers temporarily filling these positions prior to their creation could continue to serve in them permanently without examination or certification as required by Article XIV, Section 15.1. These certifications or “allocations” by the defendant board are vacated, and the defendants are ordered to proceed with testing, certification, and permanent appointment of classified employees to these positions in accordance with law and consistent with the views expressed by this decision.
AFFIRMED IN PART; REVERSED IN PART.
SUMMERS, J., dissents for reasons assigned.
DIXON, J., recused.

. Subsection 16 provides in full:
“Status of Incumbent of Position When Allocated. Every person employed in the municipal fire and police services for a continuous period of at least six calendar months immediately preceding the date that this Section takes effect in the municipality, who was regularly and permanently appointed to a position coming under the classified service, shall be inducted into and bound under the classified service, the provisions of this Section, and the rules adopted hereunder.
“When any position is first allocated hereunder, or is reallocated to a different class to correct an error in its previous allocation, or because of a change in the duties of a position which has the effect of abolishing the position and creating a new position of another class, the employee in the position may continue to serve therein, with the status, and all the rights and privileges he would have had under this Section if he had been originally appointed by examination and certification hereunder to a position of the class to which the position has been allocated or reallocated. Such employee however may be transferred without further tests of fitness or certification to any position of the class to which the position was previously allocated while held by the employee.
“Any employee who feels himself aggrieved because of any allocation or change in classification affecting his position shall, upon his request, be heard thereon by the board; and the board shall hear and decide the complaint in any manner deemed proper.” (Italics ours.)

. These Subsections respectively provide:
“13. Classification plan. Each board, as soon as practicable (not to exceed a period of eighteen months) after this Section takes effect in the municipality, shall adopt a classification plan for the fire and police services of the municipality. Each classification plan shall consist of classes to be designated either by standard titles, ranks, or a combination thereof, for all positions included in the classified service for each of the fire and police services. The classification plan may be divided into groups of classes. The various classes of positions shall be arranged in each classification plan so as to show the principal and natural lines of promotion and demotion. The classification plan shall be adopted as rules of the board, in the manner provided by this Section for the adoption of rules. Rules creating the classification plan, future classifications, abolition of any classification, any amendment thereto, or revision thereof shall be adopted by a board only after consultation with the appointing authority, and the state examiner. The original classification plan to be established when this Section takes effect in a municipality shall be prepared, after consultation with the appointing authority, and submitted to the board for its approval and adoption, by the state examiner. The board may amend or revise the classification plans before adopting them. The state examiner shall advise and assist the board in all future classifications when requested to do so.
“14. Allocation of Positions to Classes. The board, or chairman thereof subject to the subsequent approval of the board, as soon as practicable (not exceeding forty-five days) after the adoption of a classification plan, after consultation with the appointing authorities concerned, shall allocate each position in the classified service to its appropriate class; and thereafter shall likewise allocate each new position created in the service, and, when for the benefit of the service, reallocate positions from class to class.
“Whenever the duties of a position are so changed by the appointing authority that the position in effect becomes one of a different class from that to which it is allocated, the change shall operate to abolish the position and to create a new position of the different class.
“Whenever the board finds any change in the duties of any position in the classified service was brought about by the appointing authority to effect a reduction in the classification of any employee because of political, religious, or discriminatory reasons, or without just cause, it shall refuse to recognize any such action, and shall order the appointing authority to continue the employee in the position and class with all rights and privileges.
“15. Use of Class Titles. The title of each class shall be the official title of every position *1318 allocated to the class, for all purposes having to do with the position as such, and shall be used to the exclusion of all other titles on all pay rolls, budget estimates, and official records and reports pertaining to the position, except that an abbreviation or code symbol by the board may be used to designate a position of a class. Any other title satisfactory to the appointing authority may be used in official correspondence and in any other connection not having to do with the personnel processes covered by this Section. No employee shall be appointed, employed, or paid under any title other than that of the class to which the position occupied by him is allocated.”

. Subsection 16: “ * * * When any position is first allocated hereunder [i. e., under Sections 13, 14, 15] * * *.”

. Subsection 16: “ * * * When any position . . . is reallocated to a different class to correct an error in its previous allocation, or because of a change in the duties of a position which has the effect of abolishing the position and creating a new position of another class

. Even under its facts, however, we think Kelly erred if it inferred that Subsection 16 might permit a promotion in rank and pay, without examination or certification, to a member of the classified service simply because in fact, during the course of his permanent appointment to a lesser position, he has performed duties later determined properly allocable to a higher classification.