SUMMERS, Justice
(dissenting).
John L. Hoppe, John F. Templin and Shreveport Police Local Union No. 646, SEIU-NUPO, AFL-CIO, an unincorporated labor association of Shreveport, brought this suit against the City of Shreveport, Public Safety Commissioner George W. D’Artois and the Municipal Fire and Police Civil Service Board of Shreveport.
Insofar as pertinent here, the Municipal Fire and Police Civil Service Law, Section 15.1 of Article XIV of the Constitution of 1921, is part of the government of the City of Shreveport. The law provides a system of civil service for/municipalities with populations of 13,000 ti> 250,000. The constitutional provision in its entirety has been retained and continued in force and effect as statutes by Section 18 of Article X of the Constitution of 1974.
In their petition plaintiffs complain that during the first part of April 1972 Commissioner D’Artois promoted three police majors to Assistant Police Chief. Hoppe, the second senior major in the Police Department, was not included in these promotions. Until the creation of the classification of “assistant police chief” the rank of major was the highest in the classified service of the Shreveport Police Department. In addition to Hoppe’s opposition, the action was protested by plaintiff Templin on behalf of the Union. However, in September 1972 the Board initiated the procedure to create the classification of Assistant Police Chief. Notwithstanding these objections, the Board created the classification and proceeded to confirm the three officers who had been temporarily appointed by the Commissioner, thereby depriving Hoppe of the preference to appointment to which his seniority entitled him under the civil service law.
Plaintiffs asked for recission of the appointments of the officers confirmed by the Board and for an injunction to prevent implementation of these positions. At the same time, plaintiffs appealed to the district court for review of the actions taken and decisions rendered by the Board. The *1321 cases were consolidated. After trial, the district court dismissed plaintiffs’ suit for injunction and also affirmed the Board’s action. On appeal the Second Circuit affirmed. 327 So.2d 548. Certiorari was granted on plaintiffs’ application. 332 So.2d 217.
Because of the growth of the police department, the city’s auditor recommended a broader base for carrying out the Commissioner’s responsibilities. Additional positions of Assistant Chief of Police under a new classification were suggested. Accordingly, in April 1972 the Commissioner temporarily appointed Majors McDowell, Lani-gan and Cash to positions of Assistant Chief because they were then performing the duties of that position and bearing the commensurate responsibility. At the same time, the Commissioner requested that the Board create the new classification of Assistant Chief of Police and asked that McDowell, Lanigan and Cash be confirmed into these positions. In the meantime, these officers received an increase in pay and the titles to those positions under the temporary appointments.
After the Commissioner’s request, on April 23, 1972 Templin wrote to the Board opposing the appointments and requested a hearing on the proposed classifications. His concern was that these appointments, made without regard to Hoppe’s seniority, deprived Hoppe of an appointment to which he was entitled. Templin also believed that these actions had an effect upon the status of all police officers. Moreover, he claimed the appointments were made contrary to the procedure prescribed by the civil service law. La.Const. art. XIV, § 15.1, para. 24(c).
Based upon the Commissioner’s request, the Board in Shreveport requested that the State Examiner in Baton Rouge prepare the classification specifications. These were received by the Board in Shreveport on April 27, 1972, and a Board meeting was called for the next week. A quorum of the Board could not be assembled, however, until June 7. The classification specifications were discussed in detail at that time. Delays in processing the Commissioner’s request were encountered, because board members had to be replaced by election. More delays were experienced because of a contest in the election, coupled with the fact that it was the concensus of the available Board members that the full membership should consider the request.
Finally, the full Board met on September 14, at which time Templin was present and was heard. At this meeting the classification specifications were adopted by the Board and posted the next day for thirty days with notice of a public hearing to be held on October 18, 1972. At the October 18 hearings alternate classifications were proposed by interested participants. These were taken under advisement by the Board. Temp-lin was again present and participated in this hearing. The hearing was adjourned, and the matter taken under advisement. The Board’s final meeting on the matter was held on November 3, 1972. At this meeting the Board announced that two classifications were adopted, one for Assistant Chief for Administration and one for Assistant Chief. McDowell, Lanigan and Cash were confirmed in these positions, McDowell and Lanigan as Assistant Chiefs and Cash as Assistant Chief for Administration. Templin was not notified of this last meeting and did not attend. The adopted classification was then given broad circulation among the police and included in the individual officers’ manuals.
Plaintiffs’ challenge to the action of the Board in allocating these three positions and confirming Majors McDowell, Lanigan and Cash, and the Board’s alleged failure to comply with the procedures prescribed in adopting those classifications is not well-founded.
I.
The central issue involves an interpretation of Section 15.1(16) of Article XIV of the Constitution of 1921, which reads:
“Every person employed in the municipal fire and police services for a continuous period of at least six calendar months immediately preceding the date that this Section takes effect in the municipality, *1322 who was regularly and permanently appointed to a position coming under the classified service, shall be inducted into and bound under the classified service, the provisions of this Section, and the rules adopted hereunder.
“When any position is first allocated hereunder, or is reallocated to a different class to correct an error in its previous allocation, or because of a change in the duties of a position which has the effect of abolishing the position and creating a new position of another class, the employee and [sic, in] the position may continue to serve therein, with the status and all the rights and privileges he would have had under this Section if he had been originally appointed by examination and certification hereunder to a position of the class to which the position has been allocated or reallocated. Such employee however may be transferred without further tests of fitness or certification to any position of the class to which the position was previously allocated while held by the employee.
“Any employee who feels himself aggrieved because of any allocation or change in classification affecting his position shall, upon his request, be heard thereon by the board; and the board shall hear and decide the complaint in any manner deemed proper.” (emphasis added).
The emphasized portion of the second paragraph quoted above provides that when any position is first allocated the employee in that position may continue to serve in that position, with the status and all the rights and privileges he would have had under the Municipal Fire and Police Civil Service Law if he had been originally appointed by examination or certification to a position of the class to which the position has been allocated or reallocated. This much is a plain statement of the rule governing this case. It remains to be determined whether the three appointees, McDowell, Lanigan and Cash, were, as the foregoing provision requires, “in the position” when the positions were “first allocated”.
The order in which the events occurred makes the first allocation effective November 3, 1972, the date the Board approved the classifications and confirmed the appointees in the positions of Assistant Chief for Administration and Assistant Chief.
The only evidence bearing upon the duties and responsibilities of McDowell, Lanigan and Cash, at the time of their appointment and subsequent confirmation when the positions were first allocated on November 3, 1972, is the testimony of the Commissioner. He said that Major McDowell had been in charge of Special Services for ten years preceding his appointment on April 15, 1972. A broad range of duties were assigned to him including custody and supervision of records, administrative duties connected with purchases, and other administrative duties concerning the Department of Public Safety, not limited to the Police Department. In that capacity he had authority to command uniformed policemen when needed for parades and other functions involving a large concentration of people. He was also assigned the task of overseeing personnel and police training.
Lanigan had, for many years, been regarded by the police and the public as the supervisor of all major investigations of crime. He was regarded as a very capable investigator and especially qualified in this field.
Cash, as Assistant Chief for Administration, had been assigned for a long time to those operations of the Department involving payroll records, purchases for the garage, jail and the general administrative requirements of fiscal control. The duties assigned to McDowell, Lanigan and Cash were of a specialized nature which other policemen were not qualified to perform. Plaintiff Hoppe, on the other hand, had never performed duties or been assigned responsibilities even remotely related to those of McDowell, Lanigan and Cash.
The Commissioner testified that the practice adopted in this case of temporary appointments and subsequent confirmation after Board approval and allocation of the positions was the same employed previously *1323 for Superintendent of Jails and the Assistant Superintendent of Jails.
After the classifications of the positions were approved by the Board, a new table of organization was established. Thereby the duties of the appointees were specifically set out, even though they continued to perform the duties they had performed prior to their confirmation. The table of organization detailing duties and responsibilities of the employees holding these positions was principally designed to make those duties and responsibilities official. While in some instances responsibilities of the appointees may have been broader under the new table of organization, the differences were inconsequential. After confirmation, they continued to discharge most of the duties and responsibilities assigned to them prior to their confirmation.
, On these facts the evidence preponderates that the appointees were “in the positions” when the positions were first allocated. As the trial judge found, “Those changes made in the duties actually performed were not actually new duties, but were by way of refinements in job descriptions of the classifications of the positions initially submitted, these refinements being made made after suggestions by the police officers attending the Board meetings.” The Court of Appeal agreed. On these findings, these appointees are entitled to serve as if they had been originally appointed by examination and certification. Hoppe cannot complain that he was denied seniority rights. Section 15.1(16) does not consider seniority relevant under these facts.
An identical situation was involved in In Re Kelly, 224 La. 574, 70 So.2d 130 (1954), where the Court interpreted La.Rev.Stat. 33:2486, which was later incorporated verbatim into the Constitution by an amendment in 1952, thereby becoming the provision considered in the instant case. In In Re Kelly the Court recognized the only issue on the merits to be whether the City of Monroe, as the appointing authority, and the Civil Service Board were vested with power to allocate and induct the respondents into positions which had not been theretofore allocated as part of the classification plan.
In deciding the question the Court held: “A careful consideration of the entire statute and the constitutional provisions respecting civil service satisfies us that the proposition advanced by relators is not well founded and that the Civil Service Board and the trial judge were correct in ruling that the respondents were entitled to hold the positions allocated to them in the classified service, despite the fact that they had not been originally appointed thereto by examination and certification.” 224 La. at 582, 70 So.2d at 133.
The decision recognized that the action of the City of Monroe and the Civil Service Board was “strictly within the letter of the law” because the statute declared in explicit terms that, when any position is initially allocated under the Act, the employee holding it may continue to serve with the same status as he would have if he had been originally appointed by examination and certification.
In addition, the Court in In Re Kelly was of the opinion that the action of the City and Board was within the “spirit of the law”. The lawmakers did not intend, the Court said, that initial allocation of positions under a police and fireman civil service system should be filled on a competitive basis when the duties of the position were already being performed by a member of the force.
The In Re Kelly decision is dispositive of the issue in the instant case.
II.
Plaintiffs claim that the temporary appointments made in April 1972 could not exceed ninety days, and for that reason they had expired prior to November 3, 1972 when the positions were allocated. For this reason, McDowell, Lanigan and Cash were not “in the positions” at the time they were allocated, because the Commissioner had not reappointed them at the expiration of *1324 ninety days. This contention is based upon Section 15.1(26) of Article XIV of the Constitution of 1921 which authorizes temporary appointments 1) when a vacancy is to be filled and the Board is unable to certify names eligible for appointment; 2) during war time; 3) where they are provisional within a specified period after the effective date of the Act; and 4) in emergencies.
While these authorizations for temporary appointments do not specifically apply to the facts in this case, the appointments in question are implicitly authorized by Section 15.1(16) of Article XIV. If it were otherwise, employees in positions allocated for the first time could not be confirmed as the second paragraph of the quoted section plainly contemplates. It was with this understanding that the Court decided In Re Kelly. The critical fact permitting the application of Section 15.1(16) is that the employee be “in the position”. Whether the initial appointment is de facto or de jure is not determinative. The Section does not refer to any other status of the employee than that he be “in the position” when it is allocated.
III.
Plaintiffs urge that the administrative requirements were not met by the Board in adopting the new positions of assistant chiefs. This contention was made based on the fact that the ultimate decision of the Board did not create the positions exactly as proposed in the classification referred to in the notice posted thirty days before the public hearing.
The Board’s action was taken on the basis of the June 7 preliminary review of the classifications for the positions; on September 15 the classifications were again revised after hearing interested parties; as then drafted, the classifications were posted and the public notified of the October 18 hearing. Other proposals were again considered, and, finally, on November 3, with the accumulated data and proposals, the Board issued its ruling allocating the positions and confirming the three officers.
If the Board were not able to vary, even in the slightest, from the classifications referred to in the public notice preceding the October 18 hearing, there would be little purpose in a hearing for considering additional objections, facts or alternate proposals. Such was the object of the October 18 hearing. The revisions ultimately adopted were part of the decision-making process, and the resultant refinements were not such a departure from the posted classification that interested parties were prejudiced or deprived of an opportunity to be heard. The procedure adopted by the Board is authorized by Section 15.1(8) of Article XIV of the Constitution which provides that “A board may adopt any rule, either in its proposed or revised form, after holding a public hearing . . (emphasis added).
IV.
Officer Templin asserts that he was denied a hearing on his objections because he was not notified of the November 3 meeting of the Board when the decision was rendered. As the narrative of facts in the beginning of this opinion shows, Templin was notified and attended all Board meetings and was heard on each occasion. The November 3 meeting of the Board at which its decision was rendered did not require notice to the public or to Templin since hearings on the questions before the Board had previously been held.
For the reasons assigned, I cannot agree with the majority opinion or the result reached there.