CLARK, Justice.
liWe granted the writ of the City of Bossier City (hereinafter “City”) to determine the proper interpretation of La. R.S. 33:2501(C)(1); specifically, whether the statutory authority of the Bossier City Municipal Fire and Police Civil Service Board (hereinafter “Board”) to modify discipline is conditioned upon a finding the appointing authority acted in bad faith or without cause. After our review, we find a municipal fire and police civil service board has the statutory authority to review and modify the discipline imposed, even when the appointing authority acts in good faith for cause. For the reasons discussed below, we affirm the decision of the court of appeal.
FACTS AND PROCEDURAL HISTORY[1]
On November 19, 2009, Officer Phillip Vernon, a permanent police officer with the Bossier City Police Department, received a written notice of his termination from employment with the City. Officer Vernon’s termination was based on an internal affairs investigation which concluded he was in violation of two sections of the police department’s Code of Conduct. He appealed the decision to the Board.
The Board held an evidentiary hearing on February 3 and 4, 2010. On¡ ¿February *303 16, 2010, the Board issued written findings of fact and its decision. In its decision, the Board determined the City, the appointing authority in this matter, acted in good faith with cause in imposing discipline on Officer Vernon. However, the Board also determined the punishment of termination was too severe and modified the discipline to a 90-day suspension without pay.
Both the City and Officer Vernon appealed the Board’s decision to the 26th Judicial District Court in Bossier Parish, which consolidated the appeals for review. The City argued the Board was without authority to modify the discipline absent a finding the appointing authority acted in bad faith or without cause.[2] The district court heard oral argument and reviewed all of the documents submitted to the Board. The district court also reviewed the transcribed portions of the Board’s hearing.
Finding the City’s contention was contradicted by the provisions of La. R.S. 33:2501(0(1), which sets forth the Board’s authority after the investigation provided for in the statutes, the district court held the Board appropriately utilized its statutory authority to modify the order of the appointing authority. Reviewing Officer Vernon’s claims, the district court found no manifest error in the factual findings of the Board. The district court concluded, therefore, the claims raised by each party were without merit and affirmed the Board’s ruling. Both parties appealed.
On appeal, the appellate court likewise found La. R.S. 33:2501(C)(1) provided the Board with “the authority and discretion to modify Vernon’s discipline, if the modification was deemed appropriate.” City of Bossier City v. Vernon, 46,517, 46,518, p. 9 (La.App. 2 Cir. 11/2/11); 78 So.3d 153, 159.[3] The court of appeal agreed with the district court’s determination that the Board’s |.^modification was a permissible substitution of judgment pursuant to the statute. After finding no merit to Officer Vernon’s claims, the court of appeal affirmed the district court’s ruling which upheld the Board’s decision.
Both parties again sought review by filing writs in this court. We granted the City’s writ to review the proper interpretation of the statute at issue and the lower courts’ rulings. City of Bossier City v. Vernon, 2012-0078 (La.3/30/12); 85 So.3d 100.
LAW AND DISCUSSION

Applicable Law

The sole issue is the proper interpretation of La. R.S. 33:2501(0(1). Thus, the case presents us with a question of law which is reviewed by this court under a de novo standard of review. First Nat. Bank, USA v. DDS Const., LLC, 2011-1418, p. 10 (La.1/24/12); 91 So.3d 944, 951-952; Louisiana Municipal Association v. State, 2004-0227, p. 35 (La.1/19/05); 893 So.2d 809, 835. A de novo review means the court will render judgment after its consideration of the legislative provision at issue, the law and the record, without deference to the legal conclusions of the tribunals below. This court is the ultimate arbiter of the meaning of the laws of this state. First Nat. Bank, 2011-1418, p. 11; 91 So.3d at 952; Broussard v. Hilcorp Energy Co., 2009-0449, p. 3 (La.10/20/09); 24 So.3d 813, 816; Cleco *304 Evangeline, LLC v. Louisiana Tax Com’n, 2001-2162, p. 3 (La.4/3/02); 813 So.2d 351, 353.
La. R.S. 33:2501(C)(1) provides:
§ 2501. Appeals by employees to the board
[[Image here]]
C. (1) After the investigation provided for in Subsection B of this Section, the board may, if the evidence is conclusive, affirm the action of the appointing authority. If the board finds that the action was not taken in good faith for cause under the provisions of this Part, the board shall order the immediate reinstatement or reemployment of |4such person in the office, place, position, or employment from which he was removed, suspended, demoted, or discharged, which reinstatement shall, if the board so provides, be retroactive and entitle him to his regular pay from the time of removal, suspension, demotion, discharge, or other disciplinary action. The board may modify the order of removal, suspension, demotion, discharge, or other disciplinary action by directing a suspension without pay, for a given period, a reduction in pay to the rate prevailing for the next lower class, a reduction or demotion to a position of any lower class and to the rate of pay prevailing thereof, or such other lesser punitive action that may be appropriate under the circumstances.
* * *
The City argues the lower courts erred in concluding that a civil service board may modify discipline previously imposed by an appointing authority without first finding the appointing authority acted in bad faith or without cause. The City urges that to allow the Board to modify discipline without the Board finding bad faith or the absence of cause would allow the Board to ignore La. R.S. 33:2501(A) and (B)(1) and (2).[4] The City argues La. R.S. 33:2501(A) and (B) impose a “threshold inquiry” upon the Board to find bad faith or the absence of cause, and if the “threshold inquiry” is unmet, then the Board may not modify the appointing authority’s discipline.
The City essentially maintains La. R.S. 33:2501(0(1) provides authority for action by the Board only under two scenarios. First, if the evidence is conclusive, then the Board may affirm the action of the appointing authority. Second, if the | BBoard finds that the action of the appointing authority was not taken in good *305 faith for cause, than the Board must order the immediate reinstatement or reemployment of the person, which reinstatement shall be retroactive if the Board so provides. Reading the last sentence of the subsection as modifying this second scenario, the City argues if there is a finding the action was not in good faith for cause, the Board then has the additional option of modifying the discipline as it sees fit, besides reinstating or reemploying the employee.[5]
Officer Vernon disagrees. He agrees with the City that the Board may affirm the action of the appointing authority if the evidence is conclusive the employer acted in good faith for cause. He also agrees the statute provides the authority for the Board to reinstate or reemploy the person who was disciplined in bad faith or without cause. However, Officer Vernon interprets the last sentence of the subsection as allowing the Board to consider the severity of the penalty, even in cases where the appointing authority has acted in good faith for cause, in accordance with the statutory guidelines.[6]

Analysis

Our review of the statute at issue is guided by the following well-established rules of interpretation:
Legislation is the solemn expression of the will of the legislature. La. C.C. art. 2; Louisiana Municipal Association, 2004-0227, p. 35; 893 So.2d at 836. The determination of the legislature’s will regarding legislation must start with the language of the statute itself. McGlothlin v. Christus St. Patrick Hosp., 2010-2775, p. 11 (La.7/1/11); 65 So.3d 1218, 1227. The words used must be interpreted as they are generally understood. La. C.C. art. 11; McGlothlin, 2010-2775, p. 11; 65 So.3d at 1228. When the words of a statute are clear and unambiguous, and the application of the law does not lead to absurd consequences, the statute should be applied as written and no further effort should be made to determine the legislature’s intent. La. C.C. art. 9; La. R.S. 1:4; In re: Succession of Faget, 2010-0188, p. 8-9 (La.11/30/10); 53 So.3d 414, 420.
| (First Nat. Bank, 2011-1418, p. 12; 91 So.3d at 953.
In addition to our focus on the language of the statute, we must also consider laws on the same subject matter.
The laws of statutory construction require that laws on the same subject matter must be interpreted in reference to each other. The legislature is presumed to have acted with deliberation and to have enacted a statute in light of the preceding statutes involving the same subject matter. Under our longstanding rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. A statute must be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the Legislature had in enacting it. In addition, courts are bound to give effect to all parts of a statute and cannot give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided.
Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 2006-0582, p. 10 (La.11/29/06); 943 So.2d 1037, 1045 *306 (citation omitted), citing Louisiana Municipal Association, 2004-0227, p. 35-36; 893 So.2d at 836-837 (citations omitted)(footnote omitted).
Considering the statute, we find the clear and unambiguous language of La. R.S. 33:2501(0(1) authorizes the Board to modify the discipline of the appointing authority even if the discipline was imposed in good faith for cause. The first sentence of La. R.S. 33:2501(0(1) provides, if the evidence is conclusive, “the board may ... affirm the action of the appointing authority.” Under the rules of statutory construction, “[t]he word ‘shall’ is mandatory and the word ‘may1 is permissive.” La. R.S. 1:3; see Arabie v. CITGO Petroleum Corp., 2010-2605, p. 5 (La.3/13/12); 89 So.3d 307, 312; Oubre v. Louisiana Citizens Fair Plan, 2011-0097, p. 12 (La.12/16/11); 79 So.3d 987, 997. The legislature’s use of the word “may” in this sentence means the Board has the discretion, or not, to affirm the action of the appointing authority taken in good faith for cause. To read this |7sentence as urged by the City would convert the legislature’s choice of the discretionary “may” to the mandatory “shall.”
Equally as clear, the legislature in the second sentence mandates, by its use of the word “shall,” that the Board reinstate or reemploy a person upon whom discipline has been imposed in bad faith or without cause. The Board is given the discretion under these facts to order the reinstatement or reemployment to be retroactive “... if the Board so provides....”
Finally, the legislature in the third sentence authorizes the Board to modify the disciplinary action taken by the appointing authority to “such other lesser punitive action that may be appropriate under the circumstances.” It is clear this provision refers to the authority of the Board to modify disciplinary actions taken in good faith for cause because the legislature otherwise mandates the Board’s response to a finding the discipline was imposed in bad faith or without cause. Where the Board finds the discipline was imposed in bad faith or without cause, the Board must order the reinstatement or reemployment of the person “in the office, place, position, or employment from which he was removed, suspended, demoted, or discharged.” This interpretation gives effect to each of the sentences which make up the section and ensures that no part of the statute is superfluous or meaningless. We find the application of the statute’s provisions in this manner does not lead to absurd consequences and, we find, accomplishes the legislature’s intent.
We find further support for our interpretation in the statute’s legislative history, review of other civil service systems in our state, and prior decisions of this court.

Legislative History

The municipal fire and police civil service system was proposed by the legislature in 1940 Acts, No. 253 for municipalities with a population of more than |s16,000 and less than 100,000. Section 14 of Act 253, with regard to the authority of the Board to review the disciplinary actions of the appointing authority was very clear. The portion that corresponds to the third sentence of the statute at issue stated:
The Commission upon such investigation, in lieu of affirming the removal, suspension, demotion or discharge may modify the order of removal, suspension, demotion or discharge by directing a suspension, without pay, for a given period, ...
1940 Acts, No. 253 § 14 (emphasis added). A subsequent amendment expanded the coverage of the civil service system to municipalities having a population of more *307 than 18,000 and less than 100,000. See 1942 Acts, No. 58.
This prior legislation was repealed and a municipal fire and police civil service system substantially similar to the present day system was created by the legislature in 1944 Acts, No. 102. See Hoppe v. City of Shreveport, 340 So.2d 1314, 1316 (La.1976). The Board’s authority to review the appointing authority’s disciplinary actions at that time provided: “The Board shall have the power and authority to modify the order of removal, suspension, demotion, discharge or other disciplinary action by directing a suspension without pay, for a given period.” 1944 Acts, No. 102, § 30(A) (emphasis added). Subsequent amendments to the legislation expanded the applicability of the civil service system to municipalities with a population more than 13,000 and less than 250,000. See 1946 Acts, No. 30; 1948 Acts, No. 197.
Pursuant to 1952 Acts, No. 302, the provisions of the municipal fire and police civil service system were incorporated into the 1921 Louisiana Constitution almost verbatim as Art. 14, § 15.1 after the citizens of Louisiana approved the act in the general election that November. Hoppe, 340 So.2d at 1316; Trosclair v. Houma Municipal Fire and Police Civil Service Board, 252 La. 1, 2, 209 So.2d 1, 2 (La.1968), overruled in part on other grounds, Bowen v. Doyal, 259 La. So.2d 200 (La.1971); In re Kelly, 224 La. 574, 576 n. 1, 70 So.2d 130 n. 1 (La.1954). The provisions applicable to appeals by employees to the Board, consistent with the present day La. R.S. 33:2501 were found at 1921 Louisiana Constitution Art. 14, § 15.1(31). At that time, the Board’s authority to modify disciplinary actions of the appointing authority was substantially similar to its present day form: “The Board may modify the order of removal, suspension, demotion, discharge, or other disciplinary action by directing a suspension without pay, for a given period.” 1952 Acts, No. 302, § 31 (emphasis added).
This court interpreted these provisions of the 1921 Louisiana Constitution in Marchiafava v. Baton Rouge Fire and Police Civil Service Board, 233 La. 17, 96 So.2d 26 (La.1957). Officer Marchiafava was a member of the Baton Rouge Police Department whose employment was terminated. He sought administrative review with the Baton Rouge Municipal Fire and Police Civil Service Board, which affirmed the dismissal. He subsequently sought judicial review of the Board’s action in the district court. The district court found the officer was guilty of the prohibited conduct, but did not believe the activity warranted dismissal. Marchiafava, 233 La. at 24, 96 So.2d at 28. The district court reversed, set aside the officer’s dismissal, restored him to duty, and remanded the matter to the Board to decide an appropriate period of suspension without pay. Marchiafava, 233 La. at 18-20, 96 So.2d at 26-27.
This court held the district court exceeded its authority, finding the Board, and not a reviewing court, had the authority under Art. 14, Section 15.1(31) to decide not only that discipline was warranted, but also that the discipline was commensurate with the violation. Marchiafava, 233 La. at 25, 96 So.2d at 29 (“... the Board had the right to affirm the governing authority’s dismissal of plaintiff; and clearly, in so ruling, it acted ‘in good faith for cause’ (just as the district judge found). Whether such cause was sufficient to justify the dismissal | inwas a question determinable by the Board — not, according to the provisions of paragraph 31, by the court.”). Thus, we have previously held, in reviewing an earlier, substantially similar version of the statute, that the Board has the authority to review, and modify if appro *308 priate, the discipline imposed by the appointing authority, even when the appointing authority imposed discipline in good faith with cause.
In the transition from the Louisiana Constitution of 1921 to the present 1974 • Louisiana Constitution, numerous sections of the previous constitution were continued as statutes. Most of the provisions of Art. 14, § 15.1 of the 1921 Louisiana Constitution, relating to the municipal fire and police civil service system, were continued as statutes. The 1974 Louisiana Constitution, Art. 10, § 18 provides,
§ 18. Prior Provisions
Except as inconsistent with this Part, the provisions of Article XIV, Section 15.1 of the Constitution of 1921 are retained and continued in force and effect as statutes. By law enacted by two-thirds of the elected members of each house, the legislature may amend or otherwise modify any of those provisions, but it may not abolish the system of classified civil service for such firemen and municipal policemen or make the system inapplicable to any municipality having a population exceeding thirteen thousand according to the latest decennial federal census or to any parish or fire protection district operating a regularly paid fire department. However, in a municipality having a population exceeding four hundred thousand, paid firemen and municipal policemen shall be included if a majority of the electors therein voting at an election held for that purpose approve their inclusion. Such an election shall be called by the governing authority of the affected city within one year after the effective date of this constitution.
The 1974 Louisiana Constitution, Art. 10, § 16 also provides:
A system of classified fire and police civil service is created and established. It shall apply to all municipalities having a population exceeding thirteen thousand and operating a regularly paid fire and municipal police department and to all parishes and fire protection districts operating a regularly paid fire department.
The fire and police civil service laws for municipalities with a population |nover 7,000 and less than 13,000 are found in La. R.S. 33:2531 et seq.4, for municipalities "with a population over 13,000 and less than 250,000, are found in La. R.S. 33:2471 et seq.', and for municipalities with a population over 250,000 and less than 500,000, is found in La. R.S. 33:2591.[7]
From this recitation of the legislative history of La. R.S. 33:2501(0(1), it is clear, whether expressed as “... in lieu of affirming ..., may modify shall have the power and authority to modify ...;” or “... may modify ...,” the legislature has consistently provided the Board with the authority to modify the disciplinary action taken by the appointing authority, even when the discipline has been imposed in good faith for cause.[8]

*309
Other Civil Service Systems

Although there was a provision for a city civil service for municipalities having a population over 100,000 in the original 1921 Louisiana Constitution in Art. 14, § 15, the state civil service system, like the municipal fire and police civil service, began as a statute which was then incorporated into the state constitution. See 1940 Acts, No. 171; 1940 Acts, No. 172;[9] Gervais v. New Orleans Police Dept., 226 La. 782, 785-786, 77 So.2d 398, 894 (La.1954). The state and city civil service systems were found in the 1921 Louisiana Constitution in Art. 14, §§ 15(A)(2) and (3), respectively.[10] The subsection relating to appeals within that | ^earlier constitution were found at 1921 Louisiana Constitution Art. 14, § 15(0)(1), and provided:
There is vested in the State Civil Service Commission and in the appropriate Civil Service Commissions for the several cities respectively the exclusive right to hear and decide all appeals and the legality of all removal and disciplinary cases.
This court was provided the opportunity to interpret the appropriate authority of the State or City Civil Service Commissions under that constitutional provision in Brickman v. New Orleans Aviation Board, 236 La. 143, 107 So.2d 422 (La.1958). Brickman was dismissed from her job with the New Orleans Aviation Board. She appealed to the Civil Service Commission for the City of New Orleans (“Commission”), the equivalent of the Board in the instant case, which affirmed her termination. This court on original hearing affirmed.
On rehearing, however, a majority of the court found Brickman was entitled to reinstatement to her position, as the appointing authority acted without legal cause in terminating her employment. Brickman, 236 La. at 152, 107 So.2d at 425. Although the majority of the court found no legal cause to support her termination, the court agreed with Justice McCaleb’s dissent on Brickman’s contention that the Commission should have reviewed whether dismissal was a proper punishment. The Brickman majority stated:
But, it may be added, the majority is in accord with the views expressed by Mr. Justice McCaleb’s dissent herein concerning the second contention advanced in the application for rehearing: that the Civil Service Commission should and could have reviewed whether the penalty of dismissal imposed upon appellant was just and proper under the facts and commensurate with the asserted cause for the disciplinary action.... Were it not that no legal cause for disciplinary action is found by us to have been proved, the majority agrees that it would have been necessary to remand these proceedings to said Commission for it to make independent finding of its own whether the penalty of dismissal *310 was proper under the facts and circumstances of the case.
Brickman, 236 La. at 152-153, 107 So.2d at 426 (citation omitted).
In his dissent, Justice McCaleb explained that the city civil service | ^commission erred in failing to make an independent finding the penalty was proper. Brickman, 236 La. at 176-177, 107 So.2d at 434. Citing the appeal provisions in 1921 Louisiana Constitution, Art. 14, § 15(0)(1), Justice McCaleb stated: Brickman, 236 La. at 176-177, 107 So.2d at 434 (McCaleb, J., dissenting). This explanation of the function of the city civil service commission or board exercising its review power was not only joined by the court’s majority, but also by other dissenting and concurring justices.[11] Thus, nearly all of the justices were in accord that the administrative review by the city civil service commission or board entailed not only a determination that there was sufficient cause for discipline, but that the discipline imposed was commensurate with the dereliction.[12]
Accordingly, in making a determination of any case brought before them, it is their duty to decide from the facts presented whether the appointing authority has good or lawful cause for taking disciplinary action and, if this question is determined affirmatively, it must then be resolved whether the dereliction is such as to justify the punishment imposed. For, if the penalty is not commensurate with the asserted cause for the disciplinary action, then, unquestionably, there has been discrimination against the employee in violation of the law. The Commission abdicates its function of review unless it makes an independent finding on these questions, forasmuch as the issue on appeal in employee disciplinary cases is not confined to the question of whether the action of the appointing authority is arbitrary and capricious but, rather, whether the disciplinary action was founded on cause which necessarily includes inquiry into the question of whether the penalty inflicted is warranted by the facts.
In the transition from the former constitution to the present constitution, 1921 Louisiana Constitution, Art. 14, § 15(A)(2) and (3) became 1974 Louisiana Constitution, Art. 10, § 1(A) and (B).[13] The right of a classified employee in the state or city civil service systems to appeal disciplinary actions, formerly Art. 14, § 15(0)(1) in the 1921 Louisiana Constitution, became Art. 10, §§ 8 and 12 in the | T41974 Louisiana Constitution.
In Walters v. Dept. of Police of City of New Orleans, 454 So.2d 106 (La.1984), this court reviewed the proper standards for review of the appointing authority’s disciplinary action for both the city civil service commission, or board (in this case, again, the Civil Service Commission for the City of New Orleans), and the courts, after the transition to the current state constitution. Citing to Justice McCaleb’s dissent in Brickman, supra, we held:
*311 The Commission has a duty to decide independently from the facts presented whether the appointing authority has good or lawful cause for taking disciplinary action, and, if so, whether the punishment imposed is commensurate with the dereliction.
Watters, 454 So.2d at 113 (citation omitted). In remanding the matter to the Commission, the court noted the discretion of the Commission “to determine whether there is legal cause for discipline and to mete out appropriate punishment when warranted.” Watters, 454 So.2d at 116. Clearly, the court’s interpretation of the administrative review function of the Commission or Board had not changed. In reviewing the disciplinary action of an appointing authority, a civil service commission or board must decide not only if a disciplinary action has been made in good faith for cause, but additionally must make an independent assessment whether the particular punishment imposed is warranted.
Subsequent cases have held similarly when the reviewing agency has been the state civil service commission, a city civil service commission, or the state police commission. In Bannister v. Department of Streets, 1995-0404 p. 7 (La.1/16/96); 666 So.2d 641, 646, the court noted the power of a city civil service commission “to modify disciplinary action.” In discussing the court’s judicial review function, the court contrasted the court’s authority with the Commission’s responsibility to determine whether the disciplinary action is both based on legal cause and commensurate with the infraction. Bannister, 1995-0404, p. 8; 666 So.2d at 647. In Department of Public Safety and Corrections, Office of State Police v. Mensman, 1995-1950, p. 3-4 (La.4/8/96); 671 So.2d 319, 321, we relied on our holding in Walters, supra, to find the State Police Commission’s authority “to hear and decide” disciplinary cases in-eluded a duty to decide independently from the facts not only whether the appointing authority has good or lawful cause for taking disciplinary action, but also whether the punishment imposed is proper. Finally, in AFSCME, Council # 17 v. State ex rel. Dept. of Health & Hospitals, 2001-0422, p. 7 (La.6/29/01); 789 So.2d 1263, 1268, the same holding was applied within the state civil service system.
Our review of other civil service systems within the state shows the position of the commission or board reviewing the disciplinary action of the appointing authority exercises the authority to not only ensure the discipline was imposed in good faith for cause, but to independently ensure that the particular punishment imposed was proper.

Prior Decisions

In addition to the Marchiafava decision, which concerned an earlier version of the statute presently at issue, this court has recently applied the Watters holding to a case involving a municipal fire and police civil service board. In Evans v. DeRidder Mun. Fire, 2001-2466 (La.4/3/02); 815 So.2d 61, cert. denied, 537 U.S. 1108, 123 S.Ct. 884, 154 L.Ed.2d 779 (2003), the precise question before the court was whether polygraph evidence was admissible at the administrative review hearing, rather than the scope of the Board’s administrative review authority. In Evans, a member of the DeRidder city police force was terminated from his employment. The Board upheld his dismissal, as did the district court. The court of appeal, however, reversed and restored the officer to his position, finding the Board did not possess sufficient cause for the termination.
In discussing an appellate court’s multifaceted review function, this court 11ficited Watters, supra, recognizing the Board’s authority to independently decide not only *312 that there was good or lawful cause to impose discipline, but also to determine whether the discipline imposed was appropriate. Evans, 2001-2466, p. 4-5; 815 So.2d at 66. Without explication, this court recognized the duty of the Board in an administrative review of an appointing authority’s disciplinary action is functionally similar to that of a commission or board in the other civil service systems in the state.
The Board does not have the same exclusive constitutional power and authority “to hear and decide” all removal and disciplinary cases, as does the state, city and state police civil service systems. However, the municipal fire and police civil service system has statutory authority, as it was continued in the 1974 Louisiana Constitution as a body of statutes. Within those statutes, we find a similar grant of authority to the Board with regard to its review of disciplinary actions sufficient to justify a result similar to that found in Walters, and cases following.
The statutory duties of the Board include the authority to “conduct investigations and pass upon complaints by or against any officer or employee in the classified service for the purpose of demotion, reduction in position or abolition thereof, suspension or dismissal of the officer or employee, ...” in accordance with the provisions of the municipal fire and police civil service laws. La. R.S. 33:2477(5). The Board also has the authority to “[h]ear and pass upon matters which the mayor, commissioner of public safety, the chiefs of the departments affected by this Part, and the state examiner of the municipal fire and police civil service bring before it.” La. R.S. 33:2477(6). In addition, and specifically with regard to corrective and disciplinary actions, the legislature has clearly provided the Board with the authority to take appropriate action. La. R.S. 33:2500(C) provides:
Although it is incumbent upon the appointing authority to initiate corrective or disciplinary action, the board may, and shall upon the written request of any qualified elector of the state which sets out the reasons therefor, make an investigation of the conduct and performance of any employee in the classified service and, thereupon may render such judgment and order action to be taken by the appointing authority. Such action shall be forthwith taken by the appointing authority.
The City argues an appointing authority should have the ability to discipline and dismiss employees as part of its responsibility to effectively manage its workforce. While we understand the force of this argument, the legislature has nevertheless interposed a check on the appointing authority’s ability to impose discipline in this and other civil service systems in the state and such a scheme has been in existence for more than six decades. Any amendment to this system, such as is suggested by the City, should be addressed to the legislature, and not to the court.
CONCLUSION
Based upon our interpretation of La. R.S. 33:2501(0(1), we find a municipal fire and police civil service board has the statutory authority to modify the discipline imposed by an appointing authority, even if imposed in good faith for cause. Consequently, we affirm the rulings of the courts below, which upheld the Board’s action in this case and properly interpreted the statute.
DECREE
AFFIRMED
GUIDRY, J., concurs in the result and assigns reasons.

. Since the City raises only a legal question as to the statutory authority of the Board, we need present only an abbreviated version of the operative facts.

. Officer Vernon's claims on review to the Board and to the courts below will not be discussed herein. His separate writ to this court from the court of appeal’s ruling was denied.

. As in the district court, the appellate court consolidated the claims of the parties for review.

. La. R.S. 33:2501(A) and (B)(1) and (2) provide:
A. Any regular employee in the classified service who feels that he has been discharged or subjected to any corrective or disciplinary action without just cause, may, within fifteen days after the action, demand, in writing, a hearing and investigation by the board to determine the reasonableness of the action. The board shall grant the employee a hearing and investigation within thirty days after receipt of the written request.
B. (1) All such hearings and investigations conducted by the board pursuant to the provisions of this Section shall be open to the public. No hearing and investigation shall be held unless both the employee and the appointing authority have been advised at least ten days in advance of the date, time, and place therefor. If either the appointing authority or the employee fails to appear at the place, and on the day and at the hour fixed for the hearing, the board may decide the issue involved on the basis of the evidence adduced and confined to the question of whether the action taken against the employee was made in good faith for cause set forth in the provisions of this Part.
(2) Both the employee and the appointing authority shall be afforded an opportunity to appear before the board, either in person or with counsel, and present evidence to show that the action was or was not taken in good faith for cause as set forth in the provisions of this Part.

. The Louisiana Municipal Association joins the City in its argument as amicus curiae.

. The Professional Firefighters Association of Louisiana filed brief as amicus curiae on behalf of Officer Vernon.

. The provisions in the 1974 Louisiana Constitution for the city civil service, another civil service system, allowed cities with a population over 400,000 the option of excluding paid firemen and municipal policemen from the city civil service by election called within one year of the effective date of the new constitution. If these cities "opted out” of the city civil service, the municipal fire and police would be covered by the municipal fire and police civil service system. See 1974 La. Const., art. 10, § 1(B).

. Amendments made to La. R.S. 33:2501 have not affected our analysis of the specific question at issue. 1983 Acts, No. 473 repealed § 15.1 of Art. 14 of the Louisiana Constitution of 1921 and re-enacted La. R.S. 33:2501 into its present form with subsections. 1999 Acts, No. 457 amended Subsection (D) and re *309 quired the recusal of immediate family members on local civil service boards from voting on appeals of disciplinary action. 2006 Acts, No. 270 amended Subsection C to expand the types of lesser punitive actions the Board may take and changed an indefinite "they" to “the Board." Finally, 2008 Acts, No. 308 enacted Subsection (C)(3) to authorize reheatings under certain circumstances.

. There were actually earlier enactments of a state civil service system in the Second Extraordinary Session of 1934, No. 22, the Third Extraordinary Session of 1934, No. 31, and the Third Extraordinary Session of 1935, No. 25. However, these acts were repealed in 1948 Acts, No. 340 and the 1940 Act was known as the "State Civil Service Law.”

. At this time, the city civil service system applied to municipalities with a population more than 250,000.

. See Brickman, 236 La. at 179, 107 So.2d at 435 (Hawthorne, J. dissenting) and (Foumet, C.J., concurring).

. Although the court in Leggett v. Northwestern State College, 242 La. 927, 939, 140 So.2d 5, 10 (La.1962) indicated the majority erred in Brickman in its finding of no cause, subsequent cases show there was no retreat from the court’s understanding of the administrative review function of a civil service commission or board.

.The City Civil Service in 1974 Louisiana Constitution, Art. 10, § 1(B) is applicable to municipalities having a population over 400,-000.