STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

IN RE:  GARY D. SCOTT


**********


APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 89,481, DIVISION C
HONORABLE JAMES R. MITCHELL, DISTRICT JUDGE


**********


**MARC T. AMY**
**JUDGE**


**********


Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Marc T. Amy, Judges.


**APPEAL CONVERTED TO WRIT.  WRIT DENIED.**

Brian D. Cespiva
711 Washington Street
Alexandria, LA   71301
(318) 448-0905
COUNSEL FOR DEFENDANT/RESPONDENT:
     Leesville Municipal Fire and Police Civil Service Board

Cloyd Benjamin
Law Office of Cloyd Benjamin, Jr.
726-B Third Street
Natchitoches, LA   71457
(318) 352-7575
COUNSEL FOR DEFENDANT/RESPONDENT:
     City of Leesville

**Aaron L. Green**
**Vilar & Elliott, LLC**
**Post Office Box 12730**
**Alexandria, LA   71315-2730**
**(318) 442-9533**
**COUNSEL FOR PLAINTIFF/RELATOR:**
    **Gary Scott**

**AMY, Judge.**

The appellant/relator police officer appealed the City of Leesville Police Department determination that he was not eligible to continue to receive a physical fitness incentive pay supplement after he failed to attend a required police fitness examination. The police officer asserted that the cessation of the incentive pay constituted discipline and required that the City follow the attendant safeguards of La.R.S. 40:2531. The City, however, asserted that the police officer could not appeal the loss of incentive pay as the ineligibility was not disciplinary in nature. The Civil Service Board agreed, rejecting the police officer's claim. The trial court thereafter affirmed that decision. The police officer re-urges his claim in this court, seeking the supplemental pay he references as back pay. For the following reasons, we convert the appeal to an application for supervisory writ and deny the writ, maintaining the underlying judgment.

### Factual and Procedural Background

Sergeant Gary Scott was employed by the City of Leesville Police Department in November 2013 when he failed to attend a mandatory physical fitness evaluation. Deputy Chief Beth Westlake described that, in order to promote the physical fitness of its officers, the Police Department offered incentive pay in the amount of $1 per work hour for those achieving a certain level of performance on the physical fitness evaluation, conducted every six months. That pay was added to the qualifying officer's salary. This policy is also reflected in an October 2012 "memo" that Deputy Chief Westlake circulated to the officers regarding the physical fitness testing. Contained in the record, the memo provides that: "All Full-Time Patrol Officers to include investigators are required to participate unless a valid medical waiver is provided. . . . Any officer who passes the Physical Fitness

Test at 20% of their category will receive the $1.00/hour Fitness Pay incentive." The "Physical Fitness Requirements" listed thereunder included minimal standards for a "1.5 Mile Run[,]" "Sit Ups[,]" and "Push Ups[.]"

The record reflects that Sergeant Scott received the attendant physical fitness pay incentive after successful evaluations and that, in his case, the incentive pay added $80 to his salary each pay period. Upon receiving a physician's excuse related to a back injury, the physical fitness evaluation was waived, and the supplemental pay was merely continued. However, according to Deputy Chief Westlake, Sergeant Scott did not produce any such excuse at the time of the scheduled November 2013 evaluation. However, Sergeant Scott asserted that he had verbally been informed that his superior would arrange for him not to participate in the evaluation. Based on that representation, he asserted, he did not attend. Deputy Chief Westlake insisted that any such medical waiver was required to be in writing.

Thereafter, by interoffice memorandum, the Police Department provided Sergeant Scott with a "Notice of Investigation," stating that:

> This is to notify you that we are initiating an investigation into incidents involving you in a matter which occurred on November 18 and November 19, 2013. Specifically,
>
> > That on November 18, 2013 it was discovered that you had responded to a call of a Hit and Run on November 1, 2013 at Vernon Bank (Incident #2013110017) but never completed a report for the Incident.
> >
> > That on November 19, 2013 you failed to show for your Physical Fitness Evaluation. There was a Supervisor Meeting on October 9, 2013 where dates were provided for the PT Tests and a Memo was issued as well as an email sent on November

4, 2013[1] in reference to the Requirements, Dates, Times and other information about the Physical Fitness Evaluations. A reminder Memo and Email were issued on November 14, 2013 with added times due to the colder weather. You failed to appear as required to any of the dates of the Physical Fitness Evaluations nor did you provide a Valid Medical Waiver.

This investigation is an opportunity to fully explore what happened, and to determine if any departmental policies were violated. It is also our intent to give everyone, including you, an opportunity to be heard. In many cases, officers are fully exonerated once we have all the facts, but state law requires us to provide you with this notice prior to discussing the situation with you if there is a possibility that disciplinary action could result.

The person conducting this interview will be <u>Inv. Kenneth Pine</u>. I have enclosed a copy of the Police Officers Bill of Rights for your review. Our target is to complete this investigation no later than 60 days from today's date. If we feel necessary, we will ask the civil service board to extend this time for an additional 60 days, or we may see if a voluntary agreement to extend the time is of benefit to both you and the city. You will be advised of our findings as soon as they become available. As you know, at any time we question you regarding this investigation, you may be represented by counsel or any other representative of your choice. If you wish to exercise this right, you have up to 30 days within which to secure such representation. If you choose to take time to secure representation, we may be talking to other individuals who may have information about this situation. However, if you are ready to discuss the events to provide your side of the situation prior to the expiration of the 30 days, please let us know so that we might conclude the investigation as soon as possible. Otherwise, we will schedule a time at the end of 30 days to discuss your views about what happened. If we have occasion to speak with you regarding this situation at any time during the course of the investigation, our conversations will be recorded. You have an opportunity to obtain a copy of these recordings simply

---

[1] In this regard, various e-mails/memos are contained in the record regarding the physical fitness evaluation schedule. For example, a November 14, 2013 e-mail from Deputy Chief Westlake, indicated that:

Due to the cooler weather, Physical Fitness Evaluations will be given at 0800 hours and 1600 hours on Tuesday, November 19 and Thursday, November 21. The tests will be administered at the LHS Track.

As of this date, only one officer has taken the PT Test. November 19th and November 21st will be the last days for the PT Test and arrangements need to be made to be present and participate. All Full-Time Patrol Officers to include Investigators are required to participate unless a valid medical waiver is provided. Corrections Officers, D.A.R.E. Officer, Records Clerks, any Part-Time officers, etc. may participate if they choose. Patrol Officers and Corrections Officers will not take the test while on shift.

by making a written request. Should we determine that disciplinary action may be warranted, you will be advised of a pre-disciplinary hearing prior to the expiration of the investigation period. It is our desire to protect your rights while we determine whether or not any inappropriate actions may have occurred that may compromise the integrity or impact the efficiency of the Leesville Police Department.

Subsequent to this notice, the Police Department issued a "Counseling Form," listing Deputy Chief Westlake as the "Counselor" and noting two reasons for the counseling as follows:

> On November 18, 2013 it was discovered that SGT Scott had responded to a call of a Hit and Run on November 1, 2013 at Vernon Bank (Incident #2013110017) but never completed a report for the incident.
>
> SGT Scott failed to appear as required to any of the dates of the Physical Fitness Evaluations in November 2013 nor did he provide a Valid Medical Waiver.

The form included the "Counseled Officer's Own Recommendation for Improvement and/or Comments[,]" and, with regard to the physical fitness evaluations, provided that: "I, Sgt. Scott, was under the assumption that DC Westlake knew that I had a medical excuse for the Physical Fitness Evaluation. I will be more clear on that in the future if needed." The corresponding "Counselor's Recommendation For Improvement / Future Performance Expectations[,]" reveals that: "Sgt. Scott has improved on making sure reports are done in a timely matter and will be sure to make sure he turns in a Valid Medical Excuse if needed for each Physical Fitness Evaluation." The "Summary of Counseling[,]" was reported as: "Sgt. Scott was receptive to the Counseling Session and has already begun to improve the issues listed above."

Sergeant Scott did not lodge a complaint regarding the counseling form. In fact, the form itself, which bears the signatures of both the "counseled officer" and the "counselor," indicates that: "This is a Written Counseling only. It is not a

4

Written Reprimand and will not be placed in your Official Personnel File and is not appealable to the Civil Service Board." However, in light of the missed physical fitness evaluation, the City, through the Police Department, ceased paying the $1 per hour physical fitness incentive pay. Sergeant Scott alleges that he became aware of that action only upon receiving his pay check, which did not include the incentive pay.

Through counsel, Sergeant Scott mailed a "Notice of Appeal" to the Leesville Municipal Fire and Police Civil Service Board (the Civil Service Board), seeking an appeal of "the disciplinary action taken against him with regard to the investigation that began on or about November 25, 2013." He stated therein that the subject investigation "resulted in two things: (1) a counseling statement (which is likely not appealable to this Board) and (2) Sgt. Scott's rate of pay was reduced." He alleged that "[t]his reduction of pay is disciplinary action and is properly appealable to this Board." In particular, he alleged that it failed to comply with "Louisiana Civil Service Law, including the Police Officers Bill of Rights." He further referenced La.R.S. 33:2500(D)[2] of the fire and police civil service law and alleged that: "The Appointing Authority failed to furnish Sgt. Scott with a statement in writing of the action and the complete reasons therefor." Continuing with the assertion that cessation of incentive pay constituted discipline, Sergeant Scott contended that "[t]he City failed to conduct any pre-disciplinary hearing. And the 60-day time period for the City to complete its investigation has elapsed." Sergeant Scott further denied that he had committed "any infraction warranting

---

[2] Louisiana Revised Statutes 33:2500(D) provides: "In every case of corrective or disciplinary action taken against a regular employee of the classified service, the appointing authority shall furnish the employee and the board a statement in writing of the action and the complete reasons therefor."

disciplinary action." Sergeant Scott asked the Civil Service Board to "reverse the Disciplinary Action taken against him, and award attorney's fees, costs, and any further relief to which he may be entitled."

In response to Sergeant Scott's request for review, the Civil Service Board convened a hearing, by which time he was no longer employed with the Police Department.[3] The City asserted at that time that the discontinuation of incentive pay did not constitute "discipline" and, therefore, there was no basis for the hearing under La.R.S. 33:2501. At the hearing, the City Administrator, Police Department officials, and Sergeant Scott testified, offering their view of the discontinuation of benefits. As he does here, Sergeant Scott suggests that the cessation of incentive pay constituted a reduction in pay and, therefore, discipline. The City disputed the characterization of the cessation of the incentive pay as a reduction in salary. Following executive session, the Civil Service Board denied the requested relief.

Thereafter, Sergeant Scott filed a "Rule to Show Cause" in the Thirtieth Judicial District Court and styled the pleading as an appeal "from the Leesville Civil Service Board rendered on April 2, 2014 denying his appeal."[4] In a

---

[3]In his brief to this court, Sergeant Scott states that he "resigned from the Leesville Police Department for unrelated reasons." Accordingly, "the monetary damages in this case are very limited. Only six pay periods took place from the time Sgt. Scott's pay was improperly reduced. At $80 per pay period, the back pay equals to $480." (Record citations omitted.)

[4]With regard to the appeal of a Civil Service Board decision, La.R.S. 33:2501(E) provides that:

> E. (1) Any employee under classified service and any appointing authority may appeal from any decision of the board, or from any action taken by the board under the provisions of the Part that is prejudicial to the employee or appointing authority. This appeal shall lie direct to the court of original and unlimited jurisdiction in civil suits of the parish wherein the board is domiciled.

> (2) The appeal shall be taken by serving the board, within thirty days after entry of its decision, a written notice of the appeal, stating the grounds thereof and demanding that a certified transcript of the record, or written findings of facts, and all papers on file in the office of the board affecting or relating to such decision, be filed with the designated court. The board shall, within ten days,

memorandum in support of his appeal, Sergeant Scott attached documentation, including the "Notice of Investigation," the Counseling Form, correspondence from the attorney to the Civil Service Board advancing his position, and the payroll stubs from the pay periods in question. In opposition, the City filed a Motion for Summary Disposition, again denying that there was a basis for the appeal since the cessation of incentive pay did not constitute discipline. The City attached memoranda from the Police Department regarding the physical fitness examinations, expired medical excuses that had previously limited Sergeant Scott's work capacity, and the Counseling Form. The City also submitted a written finding of fact issued by the Civil Service Board.[5]

Following a hearing, the district court denied Sergeant Scott's Rule to Show Cause for the reasons orally assigned.[6]

---

after the filing of the notice of appeal, make, certify, and file the complete transcript with the designated court, and that court shall thereupon proceed to hear and determine the appeal in a summary manner.

      (3) This hearing shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this Part. No appeal to the court shall be taken except upon these grounds and except as provided in Subsection D of this Section.

[5]At the time Sergeant Scott filed his Rule to Show cause in the district court, the Civil Service Board had not issued a written finding. Sergeant Scott noted the absence of such a finding. However, that finding was subsequently rendered, with the Civil Service Board determining that "Sergeant Scott's loss of the incentive pay did not constitute a disciplinary action, rather it was simply a known consequence of failure to participate and successfully complete scheduled fitness evaluation, or to provide medical documentation which would constitute a valid waiver of his participation requirement if approved by a supervisor." It therefore denied the requested relief.

[6]At the close of the hearing, the district court stated:

      Well, from my reading of the cases that you both have presented, and as I have stated and you have stated, I don't think there's any factual dispute for whatever reasons Mr. Scott did not take a physical examination or test, and his pay that had been previous as an incentive for taking and passing to a certain level the physical fitness test was taken away from him. As it has been pointed out that, that was basically an automatic procedure that was covered in the policy of the Leesville City Police. Others who did not take the test or did not pass the test and

Sergeant Scott seeks review,[7] asserting that:

1.  The trial court committed legal error when it failed to find that the City's reduction of Sgt. Scott's pay constituted disciplinary action.

2.  The trial court committed legal error when it failed to recognize that the disciplinary action taken against Sgt. Scott was not made in good faith and for cause because it violated Louisiana Civil Service Law, the Police Officers Bill of Rights, and the Louisiana and United States Constitutions.

3.  The trial court committed legal error when it failed to recognize that the Appointing Authority bears the burden of proof of proving that the City acted in good faith and for cause when it disciplined Sgt. Scott.

4.  The trial court committed legal error when it upheld the disciplinary action taken against Sgt. Scott, considering that the City admitted that it never afforded Sgt. Scott a pre-disciplinary hearing.

5.  The trial court committed legal error when it upheld the disciplinary action taken against Sgt. Scott, considering that the City admitted that it failed to provide Sgt. Scott with written notice of the disciplinary action and complete reasons therefor.

6.  The trial court committed legal error when it upheld the disciplinary action against Sgt. Scott despite the fact that no infraction was committed.

7.  The trial court committed legal error when it affirmed the Board's action, where the Board failed to properly conduct the hearing and process Sgt. Scott's appeal in accordance with applicable law.

---

passed that continued to get that pay obviously. I think from my reading of the cases and there's some Supreme Court cases on this as well, that this incentive pay for being physically fit is not a part of the salary and the loss of that is not a disciplinary action. As counsel has pointed out in one of the cases the Supreme Court has defined basically what constitutes disciplinary action as being some action that has a long term permanent effect that constitutes basically a black mark on the record of an individual, and they also pointed out that just the loss of money is not a permanent thing because it could be made back. And I think that's what happened in this case. So, I do not feel that it was a disciplinary action. I'm going to deny the action for the appeal.

[7]Sergeant Scott filed this matter as an appeal. However, in *Miazza v. City of Mandeville*, 10-304 (La. 5/21/10), 34 So.3d 849, the supreme court explained that in instances where the legislature has vested appellate jurisdiction in the district court, a court of appeal lacks jurisdiction. *See, e.g.*, La.R.S. 33:2501 and La.R.S. 33:2561. As it directed the appellate court to do in *Miazza*, we convert this matter to an application for supervisory writ and consider this matter under this court's supervisory authority. *See* La.Const. art. 5, § 10.

**Discussion**

As can be seen from the factual and procedural history above, as well as the styling of the assignments of error, the present matter questions whether the cessation of physical fitness incentive pay constitutes a disciplinary action from which Sergeant Scott had a right of appeal. At the commencement of the district court proceeding, the trial court noted that it had been asked to resolve "whether or not the plaintiff has a right to an appeal of a Civil Service Board Ruling." Counsel for Sergeant Scott confirmed that presentation of the issue at trial and, in this court, all of the assigned errors relate to that underlying contention.

The foundational statutory authority related to employees of municipalities and parishes, such as here, reveals the importance of the central inquiry regarding discipline. Within certain parameters, and for specified reasons, La.R.S. 33:2560[8]

---

[8]The record contains references to the statutory provisions contained within La.R.S. 33:2471, et seq. (pertaining to the fire and police civil service law for municipalities between 13,000 and 250,000) and La.R.S. 33:2531, et seq. (pertaining to the fire and police civil service law for small municipalties and for parishes and fire protection districts). *See also City of Bossier City v. Vernon*, 12-78 (La. 10/16/12), 100 So.3d 301 (wherein the supreme court discusses the legislative history of the municipal fire and police civil service system and the provisions applicable to variously-sized municipalities). The record does not otherwise contain indication of the specific provisions applicable to Leesville. However, noting the similar wording of previously-referenced La.R.S. 33:2500 and 33:2560, we reference La.R.S. 33:2560 for discussion purposes as it is the standard advanced by Sergeant Scott in his appellant's brief to this court. Entitled "Corrective and disciplinary action for maintaining standards of service" for those within the fire and police civil service for small municipalities, La.R.S. 33:2560 provides.

A. The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may remove any employee from the service or take such disciplinary action as the circumstances warrant in the manner provided below, for any one of the following reasons:

1. Unwillingness or failure to perform the duties of his position in a satisfactory manner.
2. The deliberate omission of any act that it was his duty to perform.
3. The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.
4. Insubordination.
5. Conduct of a discourteous or wantonly offensive nature toward the public or toward any municipal officer or employee, and any dishonest, disgraceful or immoral conduct.

provides that "the appointing authority may remove any employee from the service, or take *such disciplinary action* as the circumstances warrant[.]" (Emphasis added.) Here, Sergeant Scott sought an "appeal" from the cessation of the physical fitness incentive pay. However, La.R.S. 33:2561, entitled "[a]ppeals

6. Drinking vinous or spirituous liquors while on duty or reporting for duty while under the influence of intoxicating beverages.

7. The use of intoxicating liquors or habit forming drugs, liquids or preparations to an extent which precludes the employee from performing the duties of his position in a safe or satisfactory manner.

8. The conviction of a felony.

9. Falsely making a statement of any material fact in his application for admission to any test for securing eligibility or appointment to any position in the classified service, or practicing or attempting to practice fraud or deception in any test.

10. Using or promising to use his influence or official authority to secure any appointment to a position within the classified service as a reward or return for partisan or political services.

11. Soliciting or receiving any money or valuable thing from any person for any political party or political purpose.

12. Inducing or attempting to induce, by threats of coercion, any person holding a position in the classified service to resign his position, take a leave of absence from his duties or waive any of his rights under the provisions of this part or of the rules of the board.

13. The development of any defect or physical condition which precludes the employee from properly performing the duties of his position, or the development of any physical condition that may endanger the health or lives of fellow employees.

14. The willful violation of any provision of this Part or of any rule, regulation or order adopted under its authority.

15. Any other act or failure to act which the board deems sufficient to show the offender to be an unsuitable or unfit person to be employed in the fire and police service.

B. Unless the cause or condition justifies an employee being permanently removed from the service, disciplinary action may extend to suspension without pay for a period not exceeding the aggregate of ninety days in any period of twelve consecutive months, reduction in pay to the rate prevailing for the next lower class, reduction or demotion to a position for any lower class and to the rate of pay prevailing therefor, or such other less drastic action that may be appropriate under the circumstances. Nothing contained herein shall prevent any employee who is physically unable to perform the duties of his position from exercising his rights of voluntary retirement under any applicable law.

C. Although it is incumbent upon the appointing authority to initiate corrective or disciplinary action, the board may, and shall upon the written request of any qualified elector of the state which sets out the reasons therefor, make an investigation of the conduct and performance of any employee in the classified service and, thereupon, may render such judgment and order action to be taken by the appointing authority. Such action shall be taken forthwith by the appointing authority.

D. In every case of corrective or disciplinary action taken against a regular employee of the classified service, the appointing authority shall furnish the employee and the board a statement in writing of the action and the complete reasons therefor.

by employees to the board" provides for such review for "[a]ny regular employee in the classified service who feels that he has been discharged *or subjected to any corrective or disciplinary action without just cause*[.]  That employee "may, within fifteen days after the action, demand in writing, a hearing and investigation by the board to determine the reasonableness of the action."  *Id.*  *Compare* La.R.S. 33:2501.

Additionally, Sergeant Scott references La.R.S. 40:2531, which affords certain minimal standards to police officers under "investigation[.]"[9]  Significantly, La.R.S. 40:2531(C) provides that:

_____

[9]In this regard, La.R.S. 40:2531 provides that:

B. Whenever a police employee or law enforcement officer is under investigation, the following minimum standards shall apply:

(1) The police employee or law enforcement officer being investigated shall be informed, at the commencement of interrogation, of the nature of the investigation and the identity and authority of the person conducting such investigation, and at the commencement of any interrogation, such officer shall be informed as to the identity of all persons present during such interrogation.  The police employee or law enforcement officer shall be allowed to make notes.

(2) Any interrogation of a police employee or law enforcement officer in connection with an investigation shall be for a reasonable period of time and shall allow for reasonable periods for the rest and personal necessities of such police employee or law enforcement officer.

(3) All interrogations of any police employee or law enforcement officer in connection with the investigation shall be recorded in full.  The police employee or law enforcement officer shall not be prohibited from obtaining a copy of the recording or transcript of the recording of his statements upon his written request.

(4)(a) The police employee or law enforcement officer being questioned, whether as a target or as a witness in an administrative investigation, shall have the right to be represented by counsel, other representative, or both, of the police employee or law enforcement officer's choice.

(b) The police employee or law enforcement officer shall be granted up to thirty days to secure such representation, during which time all questioning shall be suspended.

(c) The police employee or law enforcement officer's representative or counsel shall be allowed to offer advice to the employee or officer and make statements

11

There shall be no discipline, demotion, dismissal, or adverse action of any sort taken against a police employee or law enforcement officer unless the investigation is conducted in accordance with the minimum standards provided for in this Section. Any discipline, demotion, dismissal, or adverse action of any sort whatsoever taken against a police employee or law enforcement officer without complete compliance with the foregoing minimum standards is an absolute nullity.

In short, Sergeant Scott asserts that he was not provided the minimal safeguards of La.R.S. 40:2531 and, per Paragraph C, the discontinuation of the physical fitness incentive pay must be considered an absolute nullity. Finding no merit to Sergeant Scott's argument, we do not disturb the ruling of the trial court.

In his brief, Sergeant Scott notes that La.R.S. 33:2561(A) provides for the filing of a request for a civil service board hearing by "[a]ny regular employee in the classified service *who feels that he has been . . . subjected to any corrective or*

---

on the record regarding any question asked of the employee or officer at any interrogation, interview, or hearing in the course of the investigation.

(5) No statement made by the police employee or law enforcement officer during the course of an administrative investigation shall be admissible in a criminal proceeding.

. . . .

(7) When a formal, written complaint is made against any police employee or law enforcement officer, the superintendent of state police or the chief of police or his authorized representative shall initiate an investigation within fourteen days of the date the complaint is made. Except as otherwise provided in this Paragraph, each investigation of a police employee or law enforcement officer which is conducted under the provisions of this Chapter shall be completed within sixty days. However, in each municipality which is subject to a Municipal Fire and Police Civil Service law, the municipal police department may petition the Municipal Fire and Police Civil Service Board for an extension of the time within which to complete the investigation. The board shall set the matter for hearing and shall provide notice of the hearing to the police employee or law enforcement officer who is under investigation. The police employee or law enforcement officer who is under investigation shall have the right to attend the hearing and to present evidence and arguments against the extension. If the board finds that the municipal police department has shown good cause for the granting of an extension of time within which to complete the investigation, the board shall grant an extension of up to sixty days. Nothing contained in this Paragraph shall be construed to prohibit the police employee or law enforcement officer under investigation and the appointing authority from entering into a written agreement extending the investigation for up to an additional sixty days. The investigation shall be considered complete upon notice to the police employee or law enforcement officer under investigation of a pre-disciplinary hearing or a determination of an unfounded or unsustained complaint. Nothing in this Paragraph shall limit any investigation of alleged criminal activity.

*disciplinary action*[.]"  As, he argues, he "'feels' like he has been subjected to corrective or disciplinary action," the Civil Service Board erred in determining that he had been subjected to no disciplinary action.  However, this argument confuses the purpose of the statute and the rulings of the Civil Service Board and the trial court.  Sergeant Scott did, in fact, request a hearing and was provided with that hearing by the Civil Service Board as provided by La.R.S. 33:2561.  In turn, he again received an appeal of that ruling by the trial court pursuant to La.R.S. 33:2561(E).[10]  Both, however, made the ultimate determination that he had not been disciplined in the cessation of the physical fitness incentive pay.  Note, that it is only when an officer is under "investigation" that he or she is afforded the minimal safeguards of La.R.S. 40:2531.  If those safeguards are not met during that investigation, "any discipline, demotion, dismissal, or adverse action of any sort" is a complete nullity.  Here, there was no investigation specific to the discontinuation of the physical fitness incentive pay.

Undoubtedly, the City included the missed physical fitness evaluation in the "Notice of Investigation."  However, that investigation did not encompass the missed physical fitness evaluation in the context of the incentive pay.  Instead, Deputy Chief Westlake explained before the Civil Service Board identified that there were "two separate issues" surrounding the missed physical fitness evaluation.  Deputy Chief Westlake explained that:

---

[10]Sergeant Scott asserts both in the transcript of the trial court hearing and in his brief to this court that the Civil Service Board hearing was not properly conducted before a court reporter and transcribed so as to ensure appropriate review by the trial court.  At the trial court hearing, he challenged the City's introduction of a court-reporter transcribed recording of the subject Civil Service Board hearing.  While Sergeant Scott suggests that the transcript is deficient in this regard, La.R.S. 33:2561(B)(3) clearly provides that:  "The board shall not be required to have the testimony taken and transcribed, but either the employee or the appointing authority may, at their own expense, make the necessary arrangements therefor."

[Sergeant Scott] was referred to the internal affairs investigation because of this policy that - - it is mandated that they participate in - - separate from incentive pay. They have to, as part of their job duties, at least come out twice a year for performance evaluation so we can see their fitness level.

If you happen to pass that test at 20 percent, then you will receive fitness pay, which is a separate issue. He failed to obey the mandatory thing to show up and take it or provide the medical waiver. So that is why the internal affairs investigation went on was because he failed to follow the policy of showing up for the physical fitness evaluation to be evaluated.

Upon questioning by counsel for the City, Deputy Chief Westlake, denied that Sergeant Scott was ultimately disciplined for violation of the policy prompting the notice of investigation. Further questioning revealed that:

Q. Let's stop there for a moment. Hold that point. Even though he violated policy by failure to show up, per policy, was he disciplined for that?

A. He was not disciplined for that. He received a counseling statement for failing to show up to a mandatory physical fitness test and failing to provide the proper documentation.

Q. In other words, he was given a slip that said, look, you didn't do this?

A. Right.

Q. You need to do this?

A. Correct.

Q. And nothing - - and that was not discipline?

A. That's correct.

Q. Clearly, he could have been disciplined I guess for violation. Presumably, he could have been gone through a full-blown process of - - the disciplinary process for violation, arguably, right?

A. Right.

Q. That didn't happen?

A. No.

Q. It stopped with the counseling?

A. Correct.

14

As set forth above, the counseling letter, signed by Sergeant Scott, indicated that: "This is a Written Counseling only. It is not a Written Reprimand and will not be placed in your Official Personnel File and is not appealable to the Civil Service Board." Police Chief Greg Hill confirmed in his testimony that, even on the issue of the violation of the underlying policy, he did not feel that discipline was appropriate and had referred the matter back to Sergeant Scott's supervisor for counseling only.

Deputy Chief Westlake clearly explained that the investigation, which ultimately led only to the counseling letter described above, was due to the alleged violation of the policy. The investigation did not relate to whether Sergeant Scott was eligible for the continued availability of incentive pay.[11] In this case, he simply was not eligible for that additional incentive as he did even take the test, let alone meet the required benchmarks or provide adequate medical documentation (which Deputy Chief Westlake explained he did not). In this light, it is clear that there was no investigation leading to "any discipline, demotion, dismissal, or adverse action of any sort" that could be considered a nullity pursuant to La.R.S. 40:2531. Simply, Sergeant Scott was no longer eligible for an incentive-oriented supplement to his salary. Accordingly, we find no error in the rejection of Sergeant Scott's claim.

---

[11]Louisiana Revised Statutes 33:2586 (emphasis added) provides that:

The fire and police civil service board of any municipality, parish, or fire protection district with a classified fire and police civil service system established as provided in R.S. 33:2471 or 2531 may establish a plan for awarding incentive pay to classified employees. The plan shall include the criteria for eligibility for incentive pay, the method by which classified employees shall be reviewed for eligibility, and how such eligibility shall be determined. Determination of the amount of incentive pay and which classified employees are to receive incentive pay shall be made by the appointing authority for the municipality, parish, or fire protection district subject to available funds budgeted for such purpose. *The incentive pay awarded under the provisions of this Section shall be in addition to any other salary the classified employee is entitled to receive from the municipality, the state, or any other governmental entity.*"

**DECREE**

For the foregoing reasons, the appeal of the appellant, Gary D. Scott, is converted into an application for supervisory writ and the writ is denied. Costs of this appeal are assessed to the appellant / relator, Gary D. Scott.

**APPEAL CONVERTED TO WRIT. WRIT DENIED.**