# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE            NEWS RELEASE #038

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinion handed down on the **3rd day of September, 2025** is as follows:

**BY Crain, J.:**

**2024-CC-00543**      *MONROE MUNICIPAL FIRE AND POLICE CIVIL SERVICE BOARD VS. REGINALD BROWN AND THE CITY OF MONROE (Parish of Ouachita)*

AFFIRMED. SEE OPINION.

Justice Jeanette Theriot Knoll, retired, heard this case as Justice Pro Tempore, sitting in the vacant seat for District 3 of the Louisiana Supreme Court. She is now appearing as Justice ad hoc for Justice Cade R. Cole.

Weimer, C.J., concurs in part, dissents in part and assigns reasons.
Hughes, J., concurs in part, dissents in part and assigns reasons.
McCallum, J., concurs in part, dissents in part and assigns reasons.
Guidry, J., concurs in the result.

# SUPREME COURT OF LOUISIANA

## No. 2024-CC-00543

## MONROE MUNICIPAL FIRE AND POLICE CIVIL SERVICE BOARD

## VS.

## REGINALD BROWN AND THE CITY OF MONROE

On Writ of Certiorari to the Court of Appeal, Second Circuit, Parish of Ouachita

CRAIN, J.[1]

In this appeal of a civil service board's decision, we clarify the respective roles of the board and courts in reviewing employee discipline. Finding the record reasonably supports the board's decision was made in good faith for cause, we affirm.

## FACTS AND PROCEDURAL HISTORY

Reginald Brown was fired by the Monroe Police Department. The dismissal occurred in November 2020 and involved the investigation of a complaint of excessive force by Monroe police officers, which Brown learned about only a few months after he was appointed interim police chief by then Mayor James Mayo. Brown's conduct during and after the investigation of that incident, particularly whether he lied about the effect, if any, of an approaching mayoral election, ultimately led to the termination of his employment.

Brown administratively appealed the disciplinary action, and a civil service board reduced the punishment to a ninety-day suspension without pay. A district court reinstated the termination, but a court of appeal later reduced the punishment once again to a ninety-day suspension without pay. *See Monroe Municipal Fire &*

---

[1] Justice Jeannette Theriot Knoll, retired, heard this case as Justice Pro Tempore, sitting in the vacant seat for District 3 of the Louisiana Supreme Court. She is now appearing as Justice ad hoc for Justice Cade R. Cole.

*Police Civil Serv. Bd. v. Brown*, 55,318-CW (La. App. 2 Cir. 2/9/24) (unpublished writ action).

This court granted a writ of *certiorari*. *Monroe Municipal Fire & Police Civil Serv. Bd. v. Brown*, 24-0543 (La. 10/23/24), 394 So. 3d 1280. Before addressing the legal issues presented by the appeals of Brown's discipline, we first review in more detail the investigation of the excessive force complaint, the internal review of Brown's conduct related thereto, and the ensuing tug-of-war over the appropriate discipline in the administrative and judicial proceedings.

*Excessive Force Complaint: Williams Investigation*

On July 6, 2020, about five months into Brown's tenure as interim police chief, Timothy Williams filed a complaint alleging Monroe police officers used excessive force during his arrest. That same day, officers in the department's internal affairs division informed Brown that some of the incident was recorded by an officer's body camera, which showed Officer Jared Desadier kick Williams in the head while Williams was lying face-down on the street with his hands behind his back. It is undisputed Brown first learned of this information on the afternoon of July 6, 2020, a Monday. The Monroe mayoral election was the following Saturday, July 11, 2020.

Upon learning of the incident, Brown immediately called the Monroe city attorney and, assisted by the internal affairs officers, advised her of the situation. Brown confirmed Officer Desadier and another officer would be placed on leave pending investigations into the matter, both administrative and criminal, which would begin immediately. The city attorney agreed. Brown then met with both officers and informed them of their administrative leave pending the investigations. At Brown's direction, a department-wide email was sent notifying all employees that the officers were placed on administrative leave. Brown also spoke with Mayor

2

Mayo on July 6, 2020, and informed him of the situation. Mayor Mayo told Brown to follow all the normal procedures and protocols for handling that matter.

The next day, Tuesday, Brown spoke to his command staff about the matter and personally viewed the body camera footage. He instructed the internal affairs division to prepare the necessary paperwork to begin the administrative investigation. Brown also met with representatives of the police union, at their request, who asked if the administrative and criminal investigations could be avoided if Officer Desadier resigned. Brown said that was not acceptable and the investigations would move forward.

On Thursday, July 9, 2020, Brown received a telephone call from the city attorney and an assistant city attorney, both of whom had now reviewed the body camera footage. They recommended Brown ask the Louisiana State Police to handle the criminal investigation. Brown declined, explaining an investigation was already underway and could be handled by the department. Brown further stated that, per department policy, the only investigations usually referred out involved officer shootings or deaths in custody.

Brown remained in contact with the city attorneys and his command staff throughout the week. At some point he spoke with his ranking detective on duty, Lt. Thomas Staten, and directed him to take the criminal investigation. The date of this communication is subject to some dispute. Brown could not remember the exact date but said it was during "the days following or the following day" after he learned of the incident. Lt. Staten testified Brown contacted him the Monday after the mayoral election.

The mayoral election was on Saturday, July 11, 2020, and Mayor Mayo was defeated. The following Monday, Brown decided to request the State Police take the criminal investigation. Brown testified he made that decision based on discussions with his staff and after further considering the city attorney's

3

recommendation. The request was communicated to the State Police that Monday. In a response that afternoon, the State Police declined the case.

The next day, July 14, 2020, a department detective prepared a preliminary report confirming he was assigned the investigation that day and "the investigation continues." The investigation resulted in the arrest of Officer Desadier on July 25, 2020.

*Internal Review of Williams Investigation*

At the time of the arrest, the new mayor had taken office and, shortly after the arrest, appointed a new interim police chief, Eugene Ellis. Brown returned to his rank of corporal and was assigned to the detective division.

In a letter dated September 4, 2020, Interim Chief Ellis informed Brown of an ongoing investigation into his "possible misconduct" in the Williams investigation. Brown was placed on administrative leave and ordered to submit to an interrogation by an outside attorney handling the inquiry. The transcribed interrogation occurred on October 8, 2020, about three months after the events at issue, and focused on the timing of Brown's decision to request the State Police take the investigation. When pressed on why he did not authorize that communication sooner, Brown responded:

> [W]e have an investigation that's going on . . . . The Louisiana State Police told us exactly the same thing, which is, "You have credible investigators to work it yourself." The district attorney also called them and he was told the same thing. So in the end we ended up moving forward with the criminal investigation anyway. So the same result was going to happen, which makes what you're asking me a moot point . . . because we still end[ed] up working the investigation . . . . It had absolutely nothing to do with any mayoral election.

The interrogating attorney repeatedly asked Brown if he delayed contacting the State Police because of the mayoral election, and each time Brown responded, "Absolutely not."

Brown was next ordered to submit to a polygraph examination, which took place a week later. The examination lasted over two hours but only three exchanges

4

were "test" questions, meaning Brown's answers to those questions were the only responses reviewed by the polygraph examiner to determine their truthfulness. The test questions were:

> Did you discuss with anyone about delaying sending the Williams case to LSP [Louisiana State Police] because of the July 11th, 2020 City of Monroe mayoral election?

> Did anyone tell you to delay sending the Williams case to the LSP because of the July 11th, 2020 City of Monroe mayoral election?

> Did you delay sending the Willaims case to the LSP because you didn't want to send the Willaims case to the LSP before the July 11th, 2020 City of Monroe mayoral election?

Brown answered "No" to each question. The examiner concluded Brown's answers were deceptive and that Brown delayed the referral request, at least in part, due to the mayoral election.

Interim Chief Ellis next ordered Brown to appear at a "pre-disciplinary hearing" because Brown had failed the polygraph examination. Shortly after that order, the mayor appointed a permanent chief of police, Victor Zordan, who attended the pre-disciplinary hearing. The transcribed proceeding was led by the attorney who previously interrogated Brown. At the beginning of the hearing, Brown's counsel noted on the record they were not allowed to call witnesses or present other evidence on Brown's behalf. In a brief statement, Brown said he answered all the questions in the polygraph truthfully and stood by the information he provided in his interrogation. Brown said he was angry during the polygraph because the examiner treated him like he was guilty: "I was upset that I'm having to answer three questions in reference to something that I'm innocent of and I did not do." No one else testified.

In a letter dated November 23, 2020, Chief Zordan fired Brown. According to the letter, Brown's employment was terminated because he committed the following four acts, which will be important to the analysis in this case:

5

First, you failed a properly administered polygraph examination . . . . Second, as a result of failing the polygraph exam, you testified untruthfully at your October 8, 2020, Interrogation and once again at your November 5, 2020, PDH [pre-disciplinary hearing]. Third, you improperly delayed sending the Timothy Williams criminal investigation to the Louisiana State Police ("LSP"). And fourth, you wrongly delayed sending the Timothy Williams criminal investigation to the LSP for your own, personal benefit. As a result, you are hereby discharged from employment effective November 23, 2020.

*Appeals of the Discipline*

Brown appealed the disciplinary action to the Monroe Municipal Fire and Police Civil Service Board, an administrative body that reviews disciplinary actions against Monroe fireman and police officers. Over the course of several days, the board heard testimony from multiple witnesses and reviewed numerous exhibits presented by each party. The City of Monroe's first witness was the polygraph examiner, who explained and confirmed the results of his test. The city then called a second polygraph expert who reviewed the results of the polygraph and agreed with the examiner. Brown countered with another polygraph expert, Blake McConnell, a retired FBI agent who served as unit chief of the bureau's polygraph unit. McConnell reviewed Brown's test and concluded it was unreliable because it was not administered correctly. According to McConnell, the questions were too long, not properly constructed, and asked about intent, all of which undermine the accuracy of a polygraph examination.

Brown testified about his role and actions in the Williams investigation, detailed earlier herein, and maintained the mayoral election did not affect his approach to the matter, including his decision to request the State Police assume the investigation. Former Mayor Mayo testified that Brown informed him of the complaint and body camera video on July 6, 2020. Mayo told Brown to handle it per department policy, and there was never any discussion or suggestion about delaying the investigation because of the mayoral election.

6

Several additional officers testified, but no witness purported to be aware of any communications from Brown or anyone else suggesting the contact with the State Police was delayed due to the election. The primary dispute appeared to be whether Brown *started* the criminal investigation before or after the election. Lt. Staten testified the investigation began when Brown contacted him the Monday after the election and said the State Police had declined the case. Brown instructed Lt. Staten to handle the case, and he assigned it to two detectives, who testified at the hearing and confirmed they were assigned the case that Monday. According to Lt. Staten, he was not aware of any criminal investigation before then. But, Lt. Staten acknowledged the police chief can start an investigation on his own, and it was not unusual for the department to investigate a police brutality complaint in-house.

Brown confirmed his authority to start a criminal investigation, which he testified began as soon as he learned of the incident. He pointed to the actions he took then and soon afterward, including notifying the city attorney and mayor, meeting with his staff, placing the officers on administrative leave, reviewing the body camera footage, authorizing an internal affairs investigation, and other measures. Brown explained:

> I am the chief of police and if I want to look at further body cam videos and further evidence[,] that is an investigation . . . . [I]f it's underway I'm the person who has initiated it. I am the person . . . guiding and controlling the investigation at that point and when I decide to – to officially give it to somebody [else] . . .[,] that's my discretion.

According to former Mayor Mayo, the city's questions about when the criminal investigation "started" were technical at best:

> [Y]ou're dealing with semantics. You have a formal investigation, you have an informal investigation, you're having a criminal investigation. And Mr. Brown started the initial investigation. That leads to other investigations.

After both sides rested, the Board went into executive session to discuss the matter. Reconvening in open chambers, the Board unanimously decided the

7

disciplinary action was taken "in good faith for cause, but the punishment is not commensurate with the offense." The Board modified the discipline from termination to a 90-day suspension without pay. No other findings or reasons were given.

The city appealed to the district court. Relying on the administrative record, the district court found the board acted in good faith for cause but had arbitrarily reduced the punishment. Describing Brown's actions as "especially egregious," the district court reinstated the termination of Brown's employment, stating:

> Instead of immediately referring the [Williams] . . . criminal investigation to another agency or even internally criminally investigating[,] at least a minimum of a week lapsed prior to the criminal investigation[,] which can be a lifetime for evidence to be captured. . . . No referral was made even after the City's attorneys recommended it, and then [it] was only done after the election was unsuccessful [by] the mayor who appointed Mr. Brown as interim police chief . . . . [I]f you coupled that with intent and his – what the experts found were deceptive answers to the polygraph, it becomes especially egregious conduct by Officer Brown. There's no objective or even subjective evidence contained in the record to support a reduction from termination to suspension.

Brown appealed the ruling to the court of appeal, which found the district court lacked authority to modify the board's discipline:

> Once the district court determined that the [board] acted in good faith in imposing discipline upon Reginald Brown, no further inquiry by the district court into the Board's choice of disciplinary penalty was appropriate under the law.

*Monroe Municipal Fire & Police Civil Serv. Bd. v. Brown*, 55,318-CW (La. App. 2 Cir. 2/9/24) (unpublished writ action). The court of appeal reinstated the board's punishment of a 90-day suspension without pay. *Id*.

**DISCUSSION**

The city argues the board's decision to reduce the discipline is subject to judicial review and should be reversed because it was not made in good faith for cause. We agree the board's decision is subject to judicial review but find it reasonably supported by the evidence in the administrative record. Reaching these

8

conclusions, we clarify the board's role in the administrative proceeding, confirm the scope and standards of judicial review of the board's decision, and apply those standards in this case.

*Law Applicable to Board Proceedings*[2]

As a Monroe police officer, Brown was a classified-service employee of a municipal police department subject to Louisiana Revised Statutes 33:2471-2508. *See* La. R.S. 33:2471 (applicable to municipalities with a population between 13,000 and 250,000); *see also* La. Const. art. X, §16. These civil service laws mandate limitations and procedures applicable when an employee is disciplined by an "appointing authority," meaning the person or entity authorized to hire the employee. *See* La. R.S. 33:2473(2). This case focuses on Louisiana Revised Statute 33:2501, which defines the duties and procedures applicable to appeals of discipline.

The administrative proceeding begins when an employee demands a hearing to determine the reasonableness of the disciplinary action. *See* La. R.S. 33:2501A. In relevant part, paragraph A provides:

> Any regular employee in the classified service who feels that he has been discharged or subjected to any corrective or disciplinary action without just cause, may, within fifteen days after the action, demand, in writing, a hearing and investigation by the board *to determine the reasonableness of the action*.

La. R.S. 33:2501A (emphasis added). The reasonableness standard, declared at the outset of the statute, broadly defines the board's role in the process and, as discussed later, guides the interpretation of other provisions in Section 33:2501.

While the statute is captioned "appeals," the board proceeding is more akin to a trial than a conventional appeal. The board is the factfinder, performing the role typically reserved to the district court. *See Moore v. Ware*, 01-3341 (La. 2/25/03),

---

[2] This discussion addresses the board's role in an employee's appeal pursuant to Louisiana Revised Statute 33:2501. The board is also authorized to initiate an investigation at the request of a qualified elector. *See* La. R.S. 33:2500C. That provision is not at issue in this case.

9

839 So. 2d 940, 946; *Shields v. City of Shreveport*, 579 So. 2d 961, 964 (La. 1991). The parties are allowed to present evidence at a hearing, which is open to the public, to show the action was or was not taken "in good faith for cause." *See* La. R.S. 33:2501B(1)-(2). The appointing authority has the burden of proving its case by a preponderance of the evidence. *See Shields*, 579 So. 2d at 964.

In this context, "for cause" refers to the statutory grounds for disciplining an employee identified in Louisiana Revised Statute 33:2500A. *See Shields*, 579 So. 2d at 964; *see also* La. R.S. 33:2505. The prohibited conduct includes, among others, insubordination, failure to perform duties in a satisfactory manner, dishonest or immoral conduct, and deliberate failure to perform an act the employee had a duty to perform. *See* La. R.S. 33:2500A. If an employee commits one or more of those acts, the appointing authority has "cause" to discipline him. *See* La. R.S. 33:2500A; *Shields*, 579 So. 2d at 964.

Good faith is absent if the appointing authority acted arbitrarily or capriciously, or as the result of prejudice or political expediency. *Moore*, 839 So. 2d at 945; *Shields*, 579 So. 2d at 964. This determination considers the appointing authority's motivation for taking the disciplinary action. The prohibited conduct cited by the appointing authority must be the basis for the discipline. If the cited conduct is used only as a pretext for punishment motivated by impermissible grounds, the discipline was not taken in good faith. *See* La. R.S. 33:2501A and C(1).

At the conclusion of the evidence, the board can make one of three decisions: affirm the appointing authority's discipline, modify the discipline, or reverse the discipline and reinstate the employee. *See* La. R.S. 33:2501C(1). The statute provides:

> [T]he board may, if the evidence is conclusive, affirm the action of the appointing authority. If the board finds that the action was not taken in good faith for cause under the provisions of this Part, the board shall order the immediate reinstatement or reemployment of such person . . . , which reinstatement shall, if the board so provides, be retroactive and

entitle him to his regular pay from the time of removal . . . . The board may modify the order of removal, suspension, demotion, discharge, or other disciplinary action by directing a suspension without pay, for a given period, a reduction in pay . . ., [a] demotion . . ., or such other lesser punitive action that may be appropriate under the circumstances.

La. R.S. 2501C(1).

This subsection has both mandatory and permissive provisions. If the board finds the appointing authority did not act in good faith for cause, the board "shall" reinstate the person to their previous position of employment. *See* La. R.S. 33:2501C(1). Conversely, if the board finds the appointing authority acted in good faith for cause, the board "may" affirm the discipline or modify it. *See* La. R.S. 33:2501C(1); *City of Bossier City v. Vernon*, 12-0078 (La. 10/16/12), 100 So. 3d 301, 312.

The board's discretion to modify the discipline, however, is not unfettered. It is ancillary to the board's statutory duty to determine the reasonableness of the appointing authority's action. *See* La. R.S. 33:2501A. That determination is the board's paramount function and allows modification of the discipline only if the board finds the punishment unreasonable. *Id.* "[S]ubstantial deference [is] afforded to the appointing authority" in choosing the appropriate discipline. *See Mathieu v. New Orleans Pub. Library*, 09-2746 (La. 10/19/10), 50 So.3d 1259, 1268. As this court has cautioned, civil service boards and commissions do not serve as "*de facto* pardon boards of an appointing authority's discipline." *Lange v. Orleans Levee Dist.*, 10-0140 (La. 11/30/10), 56 So. 3d 925, 936.

*Law Applicable to Judicial Review of Board's Decision*

The board's decision can be appealed to a district court. La. R.S. 33:2501E(1). The statute more fully provides:

Any employee under classified service and any appointing authority may appeal from *any decision* of the board, or from any action taken by the board under the provisions of the Part that is prejudicial to the employee or appointing authority. This appeal shall lie direct to the

11

court of original and unlimited jurisdiction in civil suits of the parish wherein the board is domiciled.

La. R.S. 33:2501E(1) (emphasis added). As indicated, the right of appeal extends to "any decision" of the board, including, as in this case, a decision to modify the appointing authority's discipline. *See* La. R.S. 33:2501C(1), D, and E(1).

The appeal is not a trial *de novo*. The district court sits as a reviewing court exercising appellate jurisdiction. *See* La. R.S. 33:2501E; *Monroe Municipal Fire & Police Civil Service Bd. v. Brown*, 23-0907 (La. 10/17/23), 371 So. 3d 448 (*per curiam*); *White v. City of Mandeville*, 23-0880 (La. App. 1 Cir. 2/23/24), 387 So. 3d 612, 616. The board's factual findings are entitled to the same weight as those made by a trial court and are not to be overturned in the absence of manifest error. *Moore*, 839 So. 2d at 946; *Shields*, 579 So. 2d at 964. Under the manifest-error standard of review, a factual finding should not be disturbed if it has a reasonable basis in the evidence. *See Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 14-2592 (La. 12/8/15), 193 So. 3d 1110, 1116. Because the board personally observes the witnesses, its credibility determinations are entitled to great weight on appeal. *See White*, 387 So. 3d at 616. Questions of law are reviewed under a *de novo* standard. *Vernon*, 100 So. 3d at 303.

The court's review is limited to whether the board's decision was made in good faith for cause. Subsection 33:2501E(3) provides:

> This hearing shall be confined to the determination of whether the *decision* made by the board *was made in good faith for cause* under the provisions of this Part. No appeal to the court shall be taken except upon these grounds and except as provided in Subsection D of this Section [applicable to recusals]. [Emphasis added]

Giving deference to the board's factual findings, the court must determine if the evidence in the administrative record reasonably supports a finding the board's decision was made in good faith for cause. *See White*, 387 So. 3d at 616. If that finding is not reasonably supported by the evidence, the court must reverse. *See* La.

R.S. 33:2501E(3). If the record reasonably supports the decision was made in good faith for cause, the court must affirm. *Id*. Unlike the board, a court does not have the additional option of modifying the discipline if it was imposed in good faith for cause. *See* La. R.S. 33:2501E; *Meiners v. St. Tammany Parish Fire Prot. Dist. No. 4*, 20-0491 (La. 10/1/20), 341 So. 3d 558, 565-66 and n.4 (*per curiam*); *Marchiafava v. Baton Rouge Fire & Police Civil Serv. Bd.*, 233 La. 17, 25-26; 96 So. 2d 26, 28-29 (1957). Section 33:2501 does not vest the court with that authority. *Id*. If a reviewing court finds the board acted in good faith for cause, as it did in *Marchiafava* and *Meiners*, the court cannot modify the board's discipline. *See* La. R.S. 33:2501E; *Meiners*, 341 So. 3d at 565-66 and n.4; *Marchiafava*, 233 La. at 25-26; 96 So. 2d at 28-29.

Within this legal framework, we turn to the city's assignments of error.

*Assignment of Error 1*

In its first assignment of error, the city contends the court of appeal erred by holding the district court had no authority to modify the board's discipline after the court found the board acted in good faith for cause. According to the city, the court of appeal's decision "foreclose[s] any meaningful judicial review, holding that courts lack authority to evaluate a board's modification of discipline." We disagree with this statement and find the court of appeal did not err.

Any decision of the board, including a decision to modify the appointing authority's discipline, is subject to judicial review to determine if it was made in good faith for cause. *See* La. R.S. 33:2501C(1) and E. In this regard, the statute draws no distinctions between a decision to modify the discipline and a decision to affirm or reverse the discipline. All three options are decisions. *Id*.; *see also* La. R.S. 33:2501D (mandating recusals in certain circumstances from "any decision by the board to affirm, reverse, or modify the order of the appointing authority"). While reviewable, a court cannot modify the decision if the record reasonably supports a

finding the board acted in good faith for cause in reducing the appointing authority's discipline. *See* La. R.S. 33:2501E; *Meiners*, 341 So. 3d at 565-66 and n.4; *Moore*, 839 So. 2d at 945; *Marchiafava*, 233 La. at 25-26; 96 So. 2d at 28-29.

In brief reasons in a writ action, the court of appeal recognized the trial court found the board acted in good faith for cause. *Brown*, 55,318 at 2. For that reason, the court of appeal correctly held the trial court erred by modifying the board's discipline. *See* La. R.S. 33:2501E; *Meiners*, 341 So. 3d at 563; *Moore*, 839 So. 2d at 945; *Marchiafava*, 233 La. at 25; 96 So. 2d at 29. This assignment of error has no merit.

*Assignments of Error 2 and 3*

In its last assignments of error, the city contends the board's decision was arbitrary and capricious, unsupported by any evidence, and thus not made in good faith for cause. The record does not support this argument.

As required by law, Chief Zordan gave Brown written notice of the disciplinary action and the complete reasons therefor. *See* La. R.S. 33:2500D. Four reasons were specified: Brown (1) failed a "properly administered" polygraph examination, (2) testified untruthfully at the interrogation and pre-disciplinary hearing, (3) "improperly delayed" sending the Williams criminal investigation to the State Police, and (4) "wrongly delayed" sending the investigation to the State Police "for [his] own, personal benefit." These four acts are the stated "cause" for the disciplinary action. If committed, the conduct would constitute statutory grounds for discipline under Subsection 33:2500A, including dishonest conduct, an act contrary to the public interest, failure to perform his duties in a satisfactory manner, and failure to perform an act he had a duty to perform. *See* La. R.S. 33:2501A(1)-(3), (5).

The board, as the factfinder, was obligated to consider the evidence presented and determine if Brown committed one or more of these acts. The board, not the

district court, had to decide if Brown failed a properly administered polygraph, testified untruthfully, improperly delayed the request to the State Police, or wrongly delayed the request for his own, personal benefit.

While the board found cause to discipline Brown, it did not issue factual findings in connection with that decision. The board was not obligated to do so because the testimony was transcribed. *See* La. R.S. 33:2501B(2). The record thus does not reflect whether the board found merit to all or only some of the accusations against Brown. But, this does not change the standard of judicial review on appeal. The district court must still examine the record to determine if the evidence reasonably supports a finding the board's decision to modify the discipline was made in good faith for cause. *See* La. R.S. 33:2501E(3); *Moore*, 839 So. 2d at 945-46. The evidence supports that finding in this case.

For the polygraph, the city presented testimony from two experts, including the examiner, but Brown countered with an equally qualified expert, McConnell, who testified the polygraph was administered improperly and the results were unreliable. In lengthy testimony before the board, which included a slide presentation, McConnell detailed the proper procedure for a polygraph examination and identified the deviations therefrom in the subject test, including long questions that were not properly constructed and asked about intent. One of the experts called by the city agreed with McConnell that polygraph questions should be concise and conceded the subject questions were "a little wordy."

During his testimony, Brown steadfastly maintained he was honest during his polygraph as well as the interrogation and pre-disciplinary hearing. Brown confirmed he personally led the criminal investigation after first learning of the incident. He immediately informed the city attorney and the mayor, placed the involved officers on administrative leave, and notified the entire department of their status. Brown explained he initially believed the department could handle the

15

criminal investigation, so there was no need to contact the State Police. Brown noted the department normally only referred out investigations of officer shootings or deaths in custody. Brown changed his mind after discussing the matter with his command staff and further considering the city attorney's advice. Brown emphasized the State Police declined the case, and the timing of his decisions had "nothing to do with any mayoral election."

The city produced contrary evidence but nothing directly contradicting Brown's reasons for initially not contacting the State Police and later changing his mind. On this issue, the city relied on the timing of the intervening mayoral election as circumstantial evidence of Brown's motivations. The city also maintained Brown was not truthful during his interrogation about when he started the criminal investigation. The evidence indicates some disagreement about when an investigation of this nature "starts," but this was not the focus of the polygraph or the stated reasons for Brown's termination.

The crux of the matter, as identified in the termination letter, remains Brown's reasons for deciding when to contact the State Police about the Williams investigation. At his interrogation, Brown summed up his state of mind and intentions in handling the Williams investigation so soon into his tenure as interim chief:

> [S]omeone was . . . beaten. They've been beaten. . . . I have to make sure that I hold everybody accountable and that I handle this case and give it due process, due thought, because this is the first case as an interim chief that I've had to deal with. Most chiefs don't ever have to go through a case of this magnitude and of this size. . . . I have to make sure that I take my time and that I – I think things clearly and think things through it in order to make decisions. It may not be a decision made as crisply and as sharply as a seasoned thirty-year veteran, but I'm doing the best that I could in the situation that I was given.

As the factfinder, the board personally observed the witnesses and had to make credibility determinations. *See White*, 387 So. 3d at 616; *Pearson*, 609 So.2d at 1042. Those determinations, as part of the board's factual findings, are entitled

16

to great weight on appeal. *Id.* While we do not have the benefit of the board's specific factual findings, the record reasonably supports a finding of cause to discipline Brown but not to fire him. Sufficient evidence supports a finding Brown should have contacted the State Police sooner, given the serious nature of the matter, the city attorney's recommendation, and the need to avoid even the appearance of political impropriety. But, the evidence also supports a finding Brown did not fail a "properly administered" polygraph examination, did not lie during the interrogation and pre-disciplinary hearing, and did not intentionally delay contacting the State Police for his own, personal benefit. The testimony of multiple witnesses supports these findings. In short, sufficient evidence supports Brown being neglectful, but not dishonest or politically motivated, when he failed to contact the State Police sooner.

The record reasonably supports the board's decision that cause existed to discipline Brown but, given the nature of the conduct, termination of his employment was unreasonably harsh. *See* La. R.S. 33:2501A, C(1), and E(3). Considering the entirety of the evidence, the board's decision to reduce the discipline to a 90-day suspension without pay was not arbitrary or capricious. *See Moore*, 839 So. 2d 940, 945; *Shields*, 579 So. 2d at 964. The board's decision was thus made in good faith for cause. *See* La. R.S. 33:2501E(3).

**CONCLUSION**

We affirm the judgment of the court of appeal and the decision of the Monroe Municipal Fire and Police Civil Service Board to reduce Reginald Brown's discipline to a suspension without pay for ninety days.

**AFFIRMED.**

# SUPREME COURT OF LOUISIANA

### No. 2024-CC-00543

### MONROE MUNICIPAL FIRE AND
### POLICE CIVIL SERVICE BOARD

### VS.

### REGINALD BROWN AND THE CITY OF MONROE

*On Writ of Certiorari to the Court of Appeal,*
*Second Circuit, Parish of Ouachita*

**WEIMER, C.J.**, concurring in part and dissenting in part.

This court granted the writ application of the City of Monroe to address the various standards of review by municipal fire and police civil service boards, the district court, and the court of appeal.

I respectfully dissent in part because I disagree with certain aspects of the majority's analysis which fails to recognize decades of jurisprudential developments regarding the board's role in the process. I further dissent because I believe that the court of appeal legally erred in evaluating the district court's role in the review process. Nonetheless, I concur in the majority's affirmance of the ultimate resolution by the court of appeal, reinstating the sanction imposed by the civil service board, because "the record [rationally and] reasonably supports the board's decision was made in good faith for cause." **Monroe Municipal Fire and Police Civil Service Board v. Brown**, 24-00543 (La. 9/__/25), slip op., p. 1; see La. R.S. 33:2501(E)(3).

In attempting to clarify the board's role, the majority states that "[t]he reasonableness standard declared at the outset of [La. R.S. 33:2501], broadly defines the board's role in the process and ... guides the interpretation of other provisions in Section 33:2501." See La. R.S. 33:2501(A). Yet the majority opinion fails to address

the extensive jurisprudence that has developed regarding "reasonableness" under the statute. The legislature's use of the term "reasonableness" affords the board flexibility in evaluating the facts on a case-by-case basis. Such evaluation of what is reasonable based on the facts of various cases has led to the development of a body of jurisprudence that provides guidance to boards, as well as the bench and the bar, regarding the subjective term 'reasonableness." Of course, in our civil law system, the law as written by the legislature is the primary source of law and jurisprudence is the secondary source of law.[1] However the legislature painted with a broad brush by choosing the word "reasonableness," and the jurisprudence interpreting the statute establishes parameters and limitations enabling those impacted by the law to better understand what the legislature intended by its use of the term in La. R.S. 33:2501(A).[2]

As recognized by the majority, the board is charged with determining whether the actions were taken in "good faith for cause." See La. R.S. 33:2501(B)(1) & (2) and (C)(1). See **Monroe Municipal Fire and Police Civil Service Board**, 24-00543, slip op. at 10-11. Accordingly, if the evidence conclusively establishes that the action was in good faith for cause, the board may "affirm the action of appointing the authority." La. R.S. 33:2501(C)(1). This statutory provision also provides for the reversal of the disciplinary action if "not taken in good faith for cause." ***Id.*** Alternatively, the sanction imposed by the appointing authority may be modified

---

[1] See La. C.C. art. 9; **Bergeron v. Richardson**, 20-01409, p. 9 (La. 6/30/21), 320 So.3d 1109, 1116.

[2] By way of analogy, the Fourth Amendment to the United States Constitution uses the word "reasonable" in the evaluation of searches and seizures. Likewise, decades of jurisprudence has established parameters for courts to consider when determining whether a violation has occurred.

2

when the board determines that a "lesser punitive action may be appropriate under the circumstances."[3] *Id.*

This court's decision in **City of Bossier City v. Vernon** forms part of the body of jurisprudence that has evolved over the years to provide guidance as to the board's role under La. R.S. 33:2501. See *id.*, 12-0078, pp. 14-15 (La. 10/16/12), 100 So.3d 301, 311. According to **Vernon**, the board must first determine if the appointing authority was warranted in taking disciplinary action and, if so, whether the discipline imposed by the appointing authority was commensurate with the violation. *Id.*, 12-0078 at 9, 100 So.3d at 307 (citing **Marchiafava v. Baton Rouge Fire and Police Civil Service Board**, 233 La. 17, 25, 96 So.2d 26, 29 (1957)). Accordingly, once the board here found that disciplinary action was taken by the city against Reginald Brown in good faith for cause, the board was then required to "make an independent assessment [as to] whether the particular [sanction] imposed," in this case, removal, "is warranted" or "is appropriate," that is, commensurate with Brown's infractions. See **Vernon**, 12-0078 at 14, 100 So.3d at 311; see also **Evans v. DeRidder Municipal Fire and Police Civil Service Board**, 01-2466, pp. 4-5 (La. 4/3/02), 815 So.2d 61, 66. "[T]he clear and unambiguous language of La. R.S. 33:2501(C)(1) authorizes the Board to modify the discipline of the appointing authority [to 'such other lesser punitive action that may be appropriate under the circumstances,'[4]] even if the discipline was imposed [by the appointing authority] in good faith for cause." **Vernon**, 12-0078 at 6, 100 So.3d at 306. Such authority is necessary to afford, as required, deference to the board's credibility determinations, weighing of the

---

[3] Any sanction imposed by the appointing authority must be commensurate with the infraction. See **City of Bossier City v. Vernon**, 12-0078, pp. 14-15 (La. 10/16/12), 100 So.3d 301, 311.

[4] La. R.S. 33:2501(C)(1).

evidence, and factual findings, as the facts found to support the taking of disciplinary action by the appointing authority and the board may differ, so too may their determinations as to whether a sanction is commensurate with an infraction. The board's ability to perform an independent assessment as to whether the particular sanction imposed by an appointing authority is commensurate with the infraction does not, in my opinion, allow the board to "serve as '*de facto* pardon boards of an appointing authority's discipline.'" See **Monroe Municipal Fire and Police Civil Service Board**, 24-00543, slip op. at 11. Importantly, the board's determination of the appropriate sanction is not unbridled, as it must be made in "good faith for cause" and not be arbitrary or capricious to withstand judicial review. See La. R.S. 33:2501(E)(3). By failing to consider and address this body of jurisprudence in its analysis, the majority opinion has the effect of suggesting the jurisprudence is now irrelevant. I disagree, finding the jurisprudence remains intact. Importantly, such judicial guidance informs the board, the bench, and the bar as to the board's role in determinating whether the disciplinary action was reasonable and taken in good faith for cause. The board here correctly performed its role under La. R.S. 33:2501(C)(1) in deciding Brown's appeal.[5]

As acknowledged by this court in **Bannister v. Department of Streets**, "civil service provisions ... are designed to protect public career employees from political discrimination by eliminating the 'spoils' system." *Id.*, 95-0404, p. 4 (La. 1/16/96), 666 So.2d 641, 645. Civil service provisions "embrace the merit system, and their intent is to preclude favoritism," with the goal of guaranteeing "the security and welfare of public service." **Sanders v. Dep't of Health & Human Resources**, 388 So.2d 768, 771 (La. 1980). The jurisprudence that has developed in this area follows

---

[5] The board's authority in this regard was not challenged by the city.

4

the statutory law and fosters these goals by allowing an independent board to review the disciplinary action taken by an appointing authority, including the sanction imposed, thus, allowing the board to serve as a "check on the appointing authority's ability to impose discipline." **Vernon**, 12-0078 at 17, 100 So.3d at 312. Any change in the standard applicable to the board's statutory duty regarding the appointing authority's actions is a matter for the legislature. See *id.* Although the legislature was invited in 2012 to "revisit this statutory scheme" based on concern about "whether the legislature actually intended to grant the civil service board the statutory authority to modify discipline when the appointing authority has imposed discipline in good faith and for cause," see **Vernon**, 12-0078 at 1, 100 So.3d at 313 (Guidry, J., concurring), La. R.S. 33:2501(C)(1) has not been revised by the legislature.

On review, the court of appeal granted the portion of Brown's writ application that sought review of the district court's decision that reinstated his dismissal, stating:

> In reversing the Board's imposition of a 90-day suspension without pay and reinstating the City of Monroe's termination of Brown's employment following its finding that the Board acted in good faith, the district court exceeded the scope of its authority as a court of review. Once the district court determined that the Monroe Municipal Fire and Police Civil Service Board acted in good faith in imposing discipline upon (sic) Reginald Brown, no further inquiry by the district court into the Board's choice of disciplinary penalty was appropriate under the law.

**Monroe Municipal Fire and Police Civil Service Board v. Brown**, 55,318, p. 2 (La.App. 2 Cir. 2/9/24) (unpublished writ action). Notably, upon finding that the "totality of the record ... supports the board's decision *to discipline* Mr. Brown was made in good faith for cause[,]" the district court considered "whether the board was arbitrary and capricious in ... reducing Mr. Brown's termination to ninety-day suspension as opposed to a termination," ultimately concluding "the board's reduction of Mr. Brown's termination to a ninety-day suspension was arbitrary and

capricious." (Emphasis added.) Despite the court of appeal's statement that the "district court determined that the Monroe Municipal Fire and Police Civil Service Board acted in good faith in imposing discipline," nothing in the record indicates that the district court found that the *discipline imposed* by the board was in good faith for cause so as to preclude the district court from reviewing the board's decision to modify Brown's discipline. For these reasons, under the facts of this case, I believe the court of appeal erred in finding that the district court was without authority to inquire "into the Board's choice of disciplinary penalty." Accordingly, I respectfully disagree with the majority's contrary finding. See **Monroe Municipal Fire and Police Civil Service Board**, 24-00543, slip op. at 13.

Pursuant to La. R.S. 33:2501(C)(1) and (E)(3), the board's decisions as to both the need for disciplinary action and modification of the sanction imposed are reviewable by the district court (which sits as an appellate court in these proceedings) and other reviewing courts (such as the court of appeal). See **Evans**, 01-2466 at 4-5, 815 So.2d at 66; **City of Alexandria v. Dixon**, 15-1718, pp. 10-11(La. 5/3/16), 196 So.3d 592, 598-99.[6] In the absence of a finding by the district court that the board's modification of the discipline imposed was in good faith for cause, I believe the court of appeal legally erred in finding that the district court exceeded its scope of authority under La. R.S. 33:2501(E)(3) by analyzing the specific discipline/sanction imposed by the board.[7]

---

[6] See also **Walters v. Dept. of Police of City of New Orleans**, 454 So.2d 106, 113 (La. 1984); **Bannister**, 95-0404 at 8-11, 666 So.2d at 647-49; **Moore v. Ware**, 01-3341, p. 16 (La. 2/25/03), 839 So.2d 940, 951; **Mathieu v. New Orleans Public Library**, 09-2746, pp. 5-6 (La. 10/19/10), 50 So.3d 1259, 1262-63; **City of Shreveport v. DeBello**, 46,891, pp. 3-6 (La.App. 2 Cir. 1/25/12), 86 So.3d 17, 19-21.

[7] Note that this court in **Meiners v. St. Tammany Parish Fire Protection District No. 4 Meiners**, stated:

La. R.S. 33:2561(E)[, which is virtually identical to La. R.S. 33:2501(E),] makes it

6

In sum, the board's decision to modify the sanction imposed cannot be overturned unless it was not made in good faith for cause and is arbitrary or capricious.[8] A modification made in good faith for cause by the board satisfies the board's statutory duty "to determine the reasonableness of the action," as it is indicative of a finding that the discipline imposed by the appointing authority is unreasonable. Finding that the record provides a rational and reasonable basis for the reduced sanction imposed by the board, I am unable to find that the board's decision to modify the sanction imposed by the city was arbitrary or capricious.[9]

For the foregoing reasons, I agree with the majority's affirmance of the court of appeal's decision that reversed the district court's judgment and reinstated the board's decision, but respectfully dissent from the majority's analysis of the law applicable to the board proceeding and the majority's failure to find that the court of appeal erred in limiting the district court's review.

_____

clear the district court's determination "shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this Part." In reasons for judgment, the district court clearly explained there was "sufficient evidence to support the Board's good faith" in finding the [violations]. Having found the Board acted in good faith, the district court was not entitled to weigh the relative merits of these violations in order to determine an appropriate sanction.

*Id.*, 20-0491, p. 13 (La. 10/1/20), 341 So.3d 558, 566 (footnote omitted). While a reviewing court is not free to "weigh the relative merits of these [infractions] in order to determine an appropriate sanction," a reviewing court is not precluded from reviewing for good faith for cause the board's decision to modify the sanction or discipline imposed. As noted in the dissenting opinion in **Meiners**, a reviewing court's inquiry does not end with a finding that the appointing authority acted in good faith for cause taking disciplinary action. *Id.*, 20-0491 at 1, 341 So.3d at 566 (Johnson, C.J., dissenting).

[8] The board's decision is not "in good faith" if the board "acted arbitrarily or capriciously." **Shields v. City of Shreveport**, 579 So.2d 961, 964 (La. 1991). "'Arbitrary or capricious' means the lack of a rational basis for the action taken." *Id.*

[9] The board determined that the city acted in good faith for cause in taking disciplinary action. Brown unsuccessfully contested that finding in his appeal to the district court and in his request for supervisory review by the court of appeal. Brown did not seek review by this court of the court of appeal's denial of his writ application in this regard. Therefore, this court lacks authority to determine if Brown is entitled to have his sanction further reduced. Simply stated, Brown did not file an application for a writ of certiorari to this court.

MONROE MUNICIPAL FIRE AND POLICE CIVIL SERVICE
BOARD

VS.

REGINALD BROWN AND THE CITY OF MONROE

ON WRIT OF CERTIORARI TO THE COURT OF
APPEAL, SECOND CIRCUIT,
PARISH OF OUACHITA

**Hughes, J., concurs in part and dissents in part.**

I agree with the analysis of the majority in this multi-layered review process which brings some much-needed clarity. But I cannot find, based on this record, that it was reasonable to impose *any* discipline on Mr. Brown.

Mr. Brown was informed of the incident on Monday, July 6, 2020. He immediately placed the involved officers on administrative leave, began an investigation, and *sent out a department-wide email*. There obviously was no "cover-up" of the situation.

On Saturday, July 11, *five days later*, the Mayor who appointed Mr. Brown interim chief was defeated for reelection. Did Mr. Brown's actions in immediately making the situation known department-wide contribute to the Mayor's defeat?

Within two months after the election Mr. Brown himself became a target. The pretext was the timing of the request by Mr. Brown for State Police to take over the criminal investigation. Given that department policy was to refer only officer shootings and deaths in custody to State Police, and that State Police *declined to take over the investigation* when requested, there was no reasonable basis to even investigate Mr. Brown. Add in the bogus polygraph and one simply cannot conclude

1

that the City took disciplinary action "in good faith for cause." Rather, Mr. Brown was seen as an ally of the old mayor who appointed him and thus attacked.

## SUPREME COURT OF LOUISIANA

## No. 2024-CC-00543

## MONROE MUNICIPAL FIRE AND POLICE CIVIL SERVICE BOARD

## VS.

## REGINALD BROWN AND THE CITY OF MONROE

*On Writ of Certiorari to the Court of Appeal, Second Circuit,
Parish of Ouachita*

**McCALLUM, J.**, concurring in part, dissenting in part.

I agree with the majority's analysis in clarifying the role of the Board and confirming the scope and standards of judicial review of the Board's decision. However, I disagree with the majority's application of those standards. I would restore the judgment of the learned trial court and reinstate the City of Monroe's termination of Mr. Brown.

The Board found that the City of Monroe acted in good faith when it disciplined Mr. Brown for cause. Yet, without offering factual findings in support of a modification, the Board drastically reduced the City of Monroe's discipline from a termination to a ninety-day suspension. The trial court found that the Board acted in good faith for cause when it decided to *discipline* Mr. Brown; however, the trial court did not find that the Board acted in good faith for cause when it decided to *modify* the City of Monroe's discipline of Mr. Brown. Rather, the trial court found no rational basis in the record to support the Board's decision to modify Mr. Brown's termination imposed by the City of Monroe. Accordingly, the trial court correctly reversed the Board's modification and reinstated the City of Monroe's termination of Mr. Brown.

For these reasons, I concur with the majority's discussion of the applicable standard of judicial review, as well as the Board's role in disciplinary matters such

as this. However, applying these standards to this case, the City of Monroe's decision to terminate Mr. Brown was warranted under the circumstances, as the trial court concluded. I thus dissent from the majority's decision to affirm the appellate court's reinstatement of the Board's discipline modification.